STATE, EX REL. OMAHA GAS COMPANY, APPELLANT, V. CHARLES H. WITHNELL, APPELLEE.

FILED JANUARY 5, 1907. No. 14,820.

Cities: BUILDING ORDINANCE: VALIDITY. An ordinance enacted by the mayor and council of the city of Omaha regulating the construction of buildings in said city, which provides that it shall be unlawful to erect a gas tank or holder therein without the written consent of the owners of all the property within a radius of 1,000 feet from the site of such structure, is, as to such proviso, void.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*George E. Pritchett* and *John C. Cowin,* for appellant.

*H. E. Burnam* and *I. J. Dunn, contra.*

AMES, C.

The charter of the city of Omaha, besides conferring upon the mayor and council of the city the usual powers to abate nuisances and to provide, by ordinance, police regulations for the good government and the preservation of the general welfare, health, safety and security of the city and its inhabitants, contains the following specific grant of authority: The mayor and council may "regulate or prohibit the transportation and keeping of gunpowder, oils and other combustible and explosive articles." They are also given the usual powers to prescribe fire limits and to regulate the erection of all buildings within the corporate limits. In the supposed exercise, more particularly, of the last two mentioned powers, the mayor and council enacted an ordinance containing two sections numbered, respectively, 96 and 97, of which the following is a copy:

"Section ninety-six (96). It is hereby declared unlawful to erect any tanks, or to build any storage reservoirs,

6

for the purpose of storing either illuminating or fuel gas, or to remodel any existing tank, reservoir, building or structure for such purpose not actually in use for the same at the time of the passage of this ordinance at any place in the city of Omaha, except upon the conditions in section ninety-seven (97) of this chapter prescribed.

"Section ninety-seven (97). Before constructing any building or structure to be used for the manufacture of illuminating or fuel gas, and before erecting any tanks, storage reservoir or. other receptacles for the purpose of storing either illuminating or fuel gas, and before remodeling or using any building, structure, tanks or reservoir for such purpose, the party or parties desiring such privilege shall first obtain the written consent of all the property owners within a radius of one thousand feet of the proposed building, structure, tank or reservoir to be used for such purpose, and file such permission with the building inspector of the city of Omaha and comply with all other ordinances, rules and regulations relating to buildings."

The Omaha Gas Company is a corporation of this state having its principal place of business at Omaha, and authorized and required by law and by municipal ordinance to construct, maintain and operate gas works in said city, and to manufacture and transmit and distribute, through mains and pipes in and under the streets and public grounds, illuminating and fuel gas for the use of the public and individuals, and for that purpose has erected, and for several years last past has maintained, a gas manufacturing plant upon grounds belonging to it in said city. In 1906 the gas company, for the purpose of increasing its capacity to a degree requisite to supply the needs· of a rapidly growing community, it being the only institution of its kind in the city, applied to the building inspector for a permit to erect and maintain upon its grounds and in ˙connection with its existing works a reservoir or "gas holder" capable of storing 1,200,000 cubic feet of gas. The application complies with

all municipal regulations with reference to the subject contained in the ordinance mentioned elsewhere, except the requirement of the above mentioned section 97, of the written consent of all property owners within a radius of 1,000 feet of the site of the proposed structure. Because of such omission, and for that reason alone, the inspector refused to honor the application. This is an application to the district court for a writ of mandamus compelling the issuance of the permit. The writ was denied, and the relator appeals. It thus appears that the sole question in controversy is the validity of that provision of section 97 requiring a written consent of property owners.

The ordinance does not purport to be, and was not intended to be, prohibitory, but to be regulatory only; nor is it sought to declare the manufacture and distribution of gas, or the maintenance and operation of works therefor, or the storage of gas in connection therewith, within the city, by the relator or others, a nuisance *per se;* nor is it disputed that the conduct of such a business under proper regulations is a legitimate and under existing conditions a necessary, enterprise, indispensable to the health, happiness and prosperity of the modern city and its inhabitants, or, as is said in *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U. S. 650, "is a business of a public nature," and is "one which, so far from affecting the public injuriously, has become one of the most important agencies of civilization, for the promotion of the public convenience and the public safety." The ultimate inquiry is, therefore, whether the provision in question is a reasonable exercise of the regulatory powers of the mayor and council. Counsel for the relator contend that it is not such for two reasons: First, because it is, or in practical operation may readily become, prohibitory, on account of the difficulty or impossibility of procuring the unanimous consent of all the owners of property in any locality of the city; and, second, because it assumes to confer upon individual property owners within the pre-

scribed radii absolute and arbitrary powers, whose exercise is dependent solely upon caprice, and which have no necessary connection with the public safety, health or morals, and are of such a nature that the governing body itself could not safely or lawfully be entrusted with them. These objections appear to us to have great force. As respects the former of them the city attorney urges that, although it is true, as his adversary contends, that it may be impossible to procure the requisite consent of property owners within any assignable district in the city, and therefore the regulation may be in practical effect prohibitory, still that result would amount to no more than an indirect exercise of the power of prohibition which is expressly granted by the charter. But this reasoning seems to us to be fallacious, because in such a case the prohibition, if and when it should take effect in any particular case or cases, would do so, not in obedience to the will of the responsible governing body of the city but at the instance or because of the inaction of an individual or of individuals who might be influenced by caprice or malice or favoritism or ignorance, or access to whom on account of their absence or other cause might be impossible. And the grant would in any case be made or withheld, not by the mayor and council, but by some one or more of the property owners. But it is urged that whether or not the proposed work or any like structure would be a nuisance in any particular neighborhood or district of the city would be dependent upon its immediate surroundings and the purposes for which property in the vicinity should be in use, and that it would be reasonable to permit the property owners to determine whether, or to what extent, they would submit to annoyances and to danger to their health and persons, that is, whether they would waive objection to a public nuisance for the sake of promoting or permitting an enterprise otherwise beneficial and desirable. This argument we think proves too much. The whole theory of police regulation is that people in their individual or private ca-

pacities cannot be, and ought not to be, entrusted with the guardianship of their own health, safety and social well-being. Men, women or children are not permitted, even voluntarily, to expose themselves to needless perils, nor are property owners, merely because they are such, entrusted with the power to expose others to danger. It is clearly the duty of the mayor and the council to devise, and to prescribe by ordinance, general rules by which it may be determined, by inspection of a given district or neighborhood, whether it is one within which a proposed structure or business may lawfully be erected or maintained. Such rules are necessary, equally for the protection of those who are, or are contemplating becoming, inhabitants of a given locality, or are engaged in business therein, as for persons seeking to enter upon dangerous or annoying enterprises, and for women and children, lessees and employees, and other classes of the community, as for owners of real estate. Under the ordinance in question it, indeed, might well happen that the ultimate decision would be made by one residing at the antipodes, and not a citizen of the city or even of the nation. Whether or not it is competent for the mayor and council absolutely to prohibit the maintenance of gas works within the city limits, it is not necessary and it is not intended now to decide; but what we do say is that they cannot shift their responsibility, either of prohibition or of regulation, upon any class or classes of the community, or, as it might happen, upon nonresidents, and it is this latter proposition that the argument of counsel controverts.

We are not without judicial precedent of the highest character for our conclusion, and it has been held not only that the governing body cannot commit the exercise of its legislative discretion to property owners or other private persons, but that it cannot entrust it to the caprice of any of the officers of the city, and even that it cannot reserve to itself, in its administrative rather than its legislative capacity, an absolute and despotic power to grant or refuse permits of the character in question,

in particular cases and in the absence of, or without reference to, prescribed and duly enacted rules and regulations. Thus, in *Mayor & City Council of Baltimore v. Radecke*, 49 Md. 217, an ordinance which provided that no steam sawmill or machinery, or any steam engine for any purpose, should be erected in the city without first obtaining the consent of the mayor and council was for the reason stated void. And in *City of Sioux Falls v. Kirby*, 6 S. Dak. 62, 25 L. R. A. 621, an attempted delegation of power to a building inspector to grant or refuse permits to erect, alter or repair buildings accordingly as he should be "satisfied" that the proposed structure would or would not be in compliance with the requirements of a certain regulatory ordinance was held to be void, the court saying that "the right of a person to use and improve his property as he may deem proper, consistent with law, is a constitutional right, of which he cannot be deprived at the mere will and pleasure of a city council, or of any officer appointed by it." In *Yick Wo v. Hopkins*, 118 U. S. 356, an ordinance purporting to make unlawful the "carrying on a laundry within the corporate limits of the city and county of San Francisco without first having obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone," was held to be violative of the constitution of the United States and void. Mr. Justice Matthews, speaking for the court, in the opinion, said: "The very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." And in *City of St. Louis v. Russell*, 116 Mo. 248, 20 L. R. A. 721, an ordinance providing that no livery stable should be located in any block of ground in the city without the written consent of the owners of one-half the ground of said block was held to be void. In *Ex parte Sing Lee*, 96 Cal. 354, an ordinance providing that a license to carry on

a laundry business in certain blocks should not be granted without the written permission of the village board of trustees, and permission should not be given without the written consent of the owners of certain property, was held to be void, the court saying: "It is very clear to us that the right of an owner to use his property in the prosecution of a lawful business, and one that is recognized as necessary in all civilized communities, cannot be thus made to rest upon the caprice of a majority, or any number, of those owning property surrounding that which he desires to use." A great number of other decisions of like import might be cited, but we forbear. The city attorney cites and quotes at length from a single authority to the contrary effect, to wit: *City of Chicago v. Stratton,* 162 Ill. 494, in which an ordinance is upheld that prohibits the maintenance of a livery stable in any block in which two-thirds of the buildings are devoted exclusively to residence purposes without the written consent of the owners of a majority of the lots in such block. We are unable to reconcile this decision with principle or with other decisions by the same court, or with *City of St. Louis v. Russell, supra,* which the opinion cites and approves. But the decision does not now call for careful criticism, because the distinction which it makes, whether valid or not, is fatal to the ordinance in controversy in this action. The latter is infected with the identical virus which the Illinois as well as the Missouri court found in the St. Louis ordinance, and it is immaterial whether the same or an equally fatal malady also afflicted the Chicago enactment.

We are of opinion that the ninety-seventh section of the Omaha ordinance, in so far as it requires the written consent of the property owners, is void, and recommend that the judgment of the district court be reversed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.