## AN INVALID ORDINANCE.

Common Pleas Court of Hamilton County.

ELLEN KENNEY O'ROURKE V. GEORGE W. RAPP, COMMISSIONER OF
BUILDINGS OF THE CITY OF CINCINNATI.

Decided, December 2, 1912.

*Constitutional Law—Ordinance Prohibiting Certain Occupations in
Residence Squares—Rendered Invalid by Provision Permitting a
Majority of the Property Owners to Consent to the Carrying on of
Such Occupations—Blacksmithing and Horseshoeing—Custom—
Words and Phrases.*

1. When the right of a public official to act is in question and no contractual relation exists, no custom should set aside well defined meanings of words.
2. A municipal council has power to declare a blacksmith shop a nuisance and prohibit or restrict it as to location and use, and such council also has power to delegate to its building commissioner or other agent the power to grant a permit for such a shop restricted as to such location and use—but such council has not the power to delegate to any citizen or group of citizens of such municipality any power of control over such officer. The granting of such power of control is a delegation of legislative power and is void—and a writ of mandamus will lie to compel such officer to grant the permit without the consent of any citizen or a group of citizens of a municipality.

*Peck, Shaffer & Peck,* for plaintiff.
*Alfred Bettman,* City Solicitor, contra.

DICKSON, J.

The plaintiff owns a lot of land within the limits of the city of Cincinnati, Ohio, in one of its residential districts. She made an application to the defendant building commissioner for the necessary permit to erect a forge and chimney in a building on this lot for the purpose of horseshoeing. The defendant refused the desired permit because the plaintiff has not complied with Section 452 of the codification of ordinances of the city of Cincinnati (1911), which section provides as follows:

Section 452. ''No gas reservoir, blacksmith shop, foundry, packing house, rendering plant, soap factory, tannery, brewery, distillery, grain elevator, icehouse, junk shop, laundry or any building, tipple or plant for the handling and distribution of coal or coke, shall be erected in any block or residence square, in which said block or residence square tho-thirds (2-3) of the buildings thereon are used for residence purposes, *without the written consent of the owners* of two-thirds (2-3) of all the property in such block or square improved or used for residence purposes, that the property of such person, company or corporation may be used for any of the purposes above mentioned. Said consent shall be filed with the commissioner of buildings. For the purpose of this section, said block or residence square shall be a section of land bounded by three or more public streets or alleys or natural boundaries, such as streams of water, well-defined ravines or railway rights-of-way.''

The plaintiff says that this excuse is not good because her shop is to be a horseshoeing shop and not a blacksmith shop, and also because the ordinance is void for many reasons, but chiefly because it is an unwarranted attempt to delegate a legislative power. She asks this court to compel the defendant to grant the permit.

First. Is a horseshoeing shop a blacksmith shop?

The standard dictionaries include horseshoeing under blacksmithing. The evidence clearly establishes that, by a custom in this vicinity, horseshoeing and blacksmithing are distinct trades. The defendant is a public official. In this dispute there are no contractual relations embracing this custom, and the court does not feel that a custom, in this kind of a case, should set aside well defined meanings of words, and refuses the writ on this ground.

Second. Is the ordinance invalid because it is an unwarranted delegation of a legislative power?

A blacksmith shop, including horseshoeing, is not in itself a nuisance.

Under the Constitution the municipal council has the legislative power to declare a blacksmith shop a nuisance and prohibit or restrict it as to location and use.

Before passing an ordinance of such kind the council, if it take the initiative, has a right to seek advice from all or none or a part of its constituency.  If the people take the initiative, all the people or a part thereof may petition the council.

Council may require certain things to be done by others before it acts, and too, such requirement may be imposed upon council before it acts, as a check, by the General Assembly.  All such steps and conditions are precedent, to guide or to check council; but after all such are ended council then is free to act, to exercise its legislative power, and as to the matter in hand, to grant a permit directly to one, or generally to any one, through its agent, the commissioner of buildings.  When council thus acts it uses its discretion, assumes its responsibility, accountability.

In the question in hand council has gone further.  After it has declared a blacksmith shop to be a nuisance and forbidden it, the commissioner is ordered to grant such a permit if a certain group of people consent.

Thus council has put into a consenting group of people power, its power, discretion, to grant a permit; that is to compel the commissioner to give the permit as their agent and not as council's agent.  These people thus have taken council's place by council's authority.  These people have been given a power, discretion, responsibility, with no accountability—a power vested only in council.

The power to declare a blacksmith shop a nuisance is legislative power.  So is the right to prohibit such a nuisance legislative power.  So also is the power to raise the ban with consents a legislative power.  To raise the ban is to repeal the law.

It can never be good law to give to one group of people— usually the majority—the right to control in any way another group of people—usually the minority—when that right (here consents) can legally be bought or sold.

Although there are several decisions contrary to this opinion, the court finds by the greater weight of authority that the ordinance is invalid, and grants the writ on this latter ground.

The following are the leading cases on the question involved:

*St. Louis* v. *Russell,* 116 Mo., 248 :

Syl. 1. "The power conferred on the city of St. Louis by its charter to regulate livery and sales stables includes the right to limit them to certain localities and to provide for their cleanliness, so that they may not become injurious to health."

Syl. 2. * * * "The power of the city to determine the location of livery stables is a legislative one and it can not be delegated to the owners of the property in a block in which it is intended to erect such structure."

Syl. 3. * * * "An ordinance of the city authorizing lot owners to determine whether a person shall be permitted to erect a livery stable in the block in which their property is located is invalid as permitting discrimination."

Syl. 4. "A livery stable is not *per se* a nuisance."

Page 255:

"Ministerial powers may be delegated by a city, but legislative power can not. Legislative power implies judgment and discretion on the part of those who exercise it and a special confidence and trust on the part of those who confer it."

*City of Richmond* v. *Dudley,* 129 Md., 112, and cases there cited.

To the same effect "Discrimination."

*Village of Silverton* v. *Davis, Mayor,* 10 C.C.(N.S.), 60, at 62:

The mayor was given by council the right to grant or refuse a license at his discretion and the court say:

"In this respect the ordinance does delegate discretionary power to the mayor, and not a mere ministerial duty; and while ministerial and administrative duties may be delegated to the mayor legislative can not be."

*Ex parte Sing Lee, on Habeas Corpus,* 96 California, 354:

Syl. 1. "The business of conducting a laundry is a lawful occupation and is not of itself, and irrespective of the manner in which it is conducted, offensive or dangerous to the health of those living within its vicinity, and no municipal corporation has the power to make the right of a person to follow this business at any place he may select for that purpose, dependent

upon the will of any number of citizens or property owners within its limits.''

And at page 356:

''The business of conducting a laundry is a lawful occupation, precisely as much so as that of the carpenter, blacksmith, or merchant.'' * * *

And at page 357:

''* * * but they commit the right to carry on such business at all, in all but two blocks of the town, to the unrestricted will and caprice of a majority of the real property owners within the block upon which it is proposed to establish such a laundry. * * * Such a condition imposed upon the right of a person to maintain a public laundry is not only an authorized interference with the inalienable right of such person to engage in a lawful occupation, but also with the right of the owner of property to devote it to a lawful purpose. The personal liberty of the citizen and his rights of property can not thus be invaded under the guise of police regulation.''

*City of St. Louis* v. *Howard, Appellant,* 119 Mo., 41:

Syl. 2. ''An ordinance of said city making it a misdemeanor to operate a slaughter house within three hundred feet of a dwelling house without the written consent of the occupant is invalid as attempting to substitute for the sanction of a law the written consent of one or more individuals.''

*State, ex rel,* v. *Withnell,* 78 Neb., 33:

Syl. ''An ordinance enacted by the mayor and council of the city of Omaha, regulating the construction of buildings in said city, which provides that it shall be unlawful to erect a gas tank or holder therein without the written consent of the owners of all property within a radius of one thousand feet from the site of such structure, is as to such proviso void.''

CONTRA.

*The City of Chicago* v. *Stratton et al,* 162 Ill., 494:

Syl. 2. ''A statute empowering a city to direct the location of livery stables includes the power to prohibit or forbid the location of stables within residence districts; and in making such

prohibition, such conditions and restrictions in relations to such districts may be imposed as the city council may see fit.''

Among the conditions imposed is the requirement that a per centum of neighbors must give their consent in writing to the commissioner, as in the case at bar.

In its *obiter* the court say at page 501:

''If those for whose benefit the prohibition is created, make no objection to the location of such a stable in their midst, an enforcement of the prohibition as to that block would seem to be unnecessary.'' The fact that the prohibition be unnecessary would not make a void law valid.

Again on page 502 the court say: ''*   *   * but there can be no valid objection to a law which confers an authority or discretion as to its execution, to be exercised under and pursuance of the law itself.''   And cites *The Cinti., W. & Z. R. R. Co.* v. *Comrs. of Clinton Co.,* 1 Ohio St., 77.

This Ohio case is not in point.   A regular election by the people consenting as a condition precedent, to be taxed for a certain purpose is in no way similar to the ''consent'' to set aside an ordinance.

At page 503:

''In matters of purely local concern the parties immediately interested may fairly be supposed to be more competent to judge their needs than any central authority.''   Citing *Cooley's Const. Lim., Sixth Ed.,* p. 138.

It would be good law if the council in such a case as the one at bar took advice before it acted.   But to create by law a valuable personal property right in a group of people, and delegate to a part of this group the right to sell out the balance, is not law.