LARRY COFFEY, APPELLANT AND CROSS-APPELLEE, V. COUNTY OF
OTOE, NEBRASKA, AND THE BOARD OF ADJUSTMENT OF OTOE
COUNTY, NEBRASKA, APPELLEES AND CROSS-APPELLANTS,
AND KENT AND SUE KREIFELS, INTERVENORS-APPELLEES
AND CROSS-APPELLANTS.

743 N.W.2d 632

Filed January 11, 2008.   No. S-06-921.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Katt, for appellant.

Jeffrey J. Funke, Otoe County Attorney, and David J. Partsch, for appellees County of Otoe and Board of Adjustment of Otoe County.

Joseph F. Bachmann and Shawn P. Dontigney, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellees Kent and Sue Kreifels.

HEAVICAN, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Otoe County enacted a zoning regulation that prohibits, among other things, the construction of single-family dwellings within a one-half-mile radius of certain animal feeding and waste handling facilities, unless the owner of the single-family dwelling grants an impact easement to the owner of the facility and the owner of the facility agrees to the easement. The primary issue presented in this appeal is whether the regulation, requiring that the granting of the easement be "mutual," constitutes an unauthorized delegation of legislative authority to private citizens.

## STATEMENT OF FACTS

Kent Kreifels began operating a hog confinement facility on his property in Otoe County, Nebraska, in 1990. As part of

his hog confinement operation, Kreifels disposes of the waste produced by the pigs by spreading the waste on various parts of his property. On the occasions when the waste is spread upon Kreifels' property, the dust, noise, and odor can be bothersome for neighboring property owners.

Beginning in March 2000, Otoe County held several public meetings to discuss and consider regulations for a comprehensive zoning plan for the county. In April 2001, before the zoning regulations had been adopted, Larry Coffey purchased approximately 195 acres of land adjacent to the land owned by Kreifels in Otoe County. At the time Coffey purchased the land, it was zoned as agricultural. It was Coffey's intent to divide the land into smaller parcels and sell the lots for residential development. The comprehensive zoning plan and regulations were adopted by the county on April 9, 2002, and were later amended on September 23, 2003. For purposes of this case, the amendments made to the regulations in 2003 are not substantive and thus, we will use this current version.

Under the new zoning regulations, both Kreifels' and Coffey's properties are located in the "General Agricultural District." The following regulations, designed to promote and facilitate agriculture, are relevant to this case:

> **501.01 INTENT:** The intent of [the general agricultural] district is to promote and facilitate agricultural crop production, livestock production, which is in balance with the natural environment, and other and new forms of agricultural production which are compatible with existing agricultural uses and the environmental limitations of the County. The intent is also to encourage soil and water conservation, to prevent contamination of the natural environment within the County and to preserve and protect land best suited for agricultural uses by preventing or regulating the introduction, encroachment and location of commercial uses, industrial uses and other non-agricultural uses, including non-farm residential uses, which would be or could become incompatible with the agricultural character and occasional generation of dust, odors, and other similar events produced agricultural uses, or which could result in contamination of the air, soils and

water, or which could negatively impact the use, value and enjoyment of property, and the culture and way of life in Otoe County.

. . . .

**501.03 PERMITTED PRINCIPAL USES AND STRUCTURES:** The following uses and structures shall be permitted uses, but shall require the issuance of a zoning / building permit and / or certificate of zoning compliance:

. . . .

9. Single-Family dwellings . . . provided such dwellings comply with all of the following conditions.

A. Such dwellings, if not on the same lot with and not of the same ownership as any existing confined animal feeding use . . . shall be separated from such use by the minimum distance specified in Table 501.05, MINIMUM SEPARATION DISTANCES FOR CONFINED AND INTENSIVE ANIMAL FEEDING USES for the size of the animal feeding use and the type of waste handling facility in existence, provided that if one or more impact easement(s), as defined in Section 303.53 of this Resolution, is/are granted by the owner of the dwelling unit to the owner of a confined or intensive animal feeding use or waste handling facility, any dwelling unit(s) associated with the land on which any such easement has been granted shall not be included in the minimum distance measurements herein specified.

Pursuant to table 501.05, the required minimum distance in this case between Kreifels' operation and a neighboring residence would be one-half mile. The record establishes that of the 195 acres of land owned by Coffey, approximately 192 acres fall within one-half mile of Kreifels' hog confinement operation.

Section 303.53 defines an "Impact Easement" as

[a]n easement or deed restriction, recorded in the office of the Otoe County Registrar of Deeds, which runs with the land, which is granted to the owner of an industrial use, a confined or intensive animal feeding use, a waste handling facility use or other use for the period of time that such use shall exist, by the owners of adjoining or neighboring real property in which it is *mutually agreed* that the

> grantor shall hold the grantee harmless from odor, smoke, dust, or other legal impacts associated with such use on the grantor's property when such use is operated in accordance with the terms of such easement or deed restriction. [(Emphasis supplied.)]

After the zoning regulations had been adopted, Coffey had his property surveyed. On August 29, 2002, Coffey filed with the Otoe County register of deeds a subdivision plat dividing his property into five tracts. On March 4, 2003, the zoning administrator for Otoe County sent Coffey's real estate agent a copy of the Otoe County zoning regulations and informed the agent that an impact easement would be needed from Kreifels before a building permit could be issued for Coffey's lots.

In October 2004, Coffey entered into an agreement to sell one of his parcels of land to Ray and Connie O'Connor. In the agreement, the O'Connors acknowledged the presence of Kreifels' hog confinement facility and the need to obtain an impact easement. The agreement also provided that the sale of the land was subject to the acquisition of a building permit. On December 2, Coffey, through his attorney, prepared an impact easement and sent it to Kreifels. The impact easement was attached to a letter requesting that Kreifels sign the impact easement and return it to Coffey's attorney within 7 days. Kreifels did not sign or return the impact easement.

Without having acquired an impact easement, the O'Connors requested a building permit. On December 30, 2004, the zoning administrator sent a letter to the O'Connors, explaining that pursuant to the zoning regulations, the zoning administrator could not issue a building permit within one-half mile of where Kreifels deposits liquid manure products unless the O'Connors obtained an impact easement signed by Kreifels.

Coffey then filed an application for a conditional use permit with the Otoe County Planning Commission to allow residential construction on his property. Following a hearing, the Otoe County Planning Commission denied Coffey's request on February 17, 2005. Coffey then applied to the Otoe County Board of Adjustment for a variance from the application of the zoning regulations. On April 21, the Otoe County Board of

Adjustment denied Coffey's request for a variance. The present action was then filed in the district court for Otoe County.

In his complaint, Coffey appealed the Otoe County Board of Adjustment's denial of his request for a variance. Coffey also sought declaratory and injunctive relief, claiming, among other things, that § 501.03, subsection (9)(A), and § 303.52 (now § 303.53 with the 2003 amendments) of the zoning regulations are unlawful because these sections constitute "an unlawful delegation of the county's governmental regulatory power to private individuals." Kreifels and his wife filed a motion to intervene, which was granted.

There was testimony presented at trial that Kreifels' hog confinement operation attracts a large number of flies and also generates odor, noise, and dust. Kreifels explained that, among other things, he is concerned that if he signed the easement and continued to operate his hog confinement facility, he would continually be involved in litigation regarding the validity of the easement and in potential future litigation relating to the health of the property owners within a one-half-mile radius.

The evidence presented at trial also indicated that although Kreifels refused to sign Coffey's impact easement, Kreifels had signed two impact easements in the past for other property owners whose land was adjacent to his. Kreifels testified, however, that he signed the prior impact easements because, at the time, it was his understanding that he was required to do so.

Following a bench trial, the district court affirmed the denial of Coffey's request for a variance, concluding that Coffey had failed to show that the decision of the Board of Adjustment was not supported by the evidence, or was arbitrary and unreasonable, or clearly wrong. The court also determined that the portion of § 501.03(9)(A) of the zoning regulations which provided for a mutual impact easement exception to the one-half-mile building prohibition was an unlawful delegation of the county's legislative authority and a violation of Coffey's rights to due process and equal protection of the law.

However, the court found that while the "impact easement" exception in § 501.03(9)(A) was invalid, the remainder of § 501.03(9)(A), as well as the other provisions in the zoning regulations, are still enforceable. The court explained

that "[s]triking the 'impact easement' exception portion of § 501.03(9)(A) results in the first part of § 501.03(9)(A) remaining intact, meaning that a building [sic] is strictly prohibited from building residential dwellings within the [one-half-]mile halo, the minimum distance requirement set in Table 501.05 of the Otoe County [z]oning [r]egulations."

Coffey filed a motion for new trial, which was overruled. Coffey appeals, and Otoe County and the Otoe County Board of Adjustment (hereinafter collectively Otoe County) and the Kreifelses cross-appeal.

## ASSIGNMENT OF ERROR

Coffey assigns, consolidated and restated, that the district court erred in severing only the impact easement language from § 501.03(9)(A) and enforcing the remainder of that section. Coffey asserts that the court should have either (1) found § 501.03(9)(A) void in its entirety or (2) left § 501.03(9)(A) intact and removed the language from § 303.53 requiring that the impact easement be mutually agreed to.

On cross-appeal, the Kreifelses and Otoe County assign, restated, that the district court erred in determining that the mutual impact easement language in the zoning regulations constituted an unconstitutional delegation of legislative authority.

## STANDARD OF REVIEW

The constitutionality of a statute or an ordinance is a question of law.[1] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[2]

## ANALYSIS

### CONSTITUTIONALITY OF § 501.03(9)(A)

We first address the argument raised by the Kreifelses and Otoe County in their cross-appeal, as our resolution of this issue is dispositive of this appeal. On cross-appeal, the Kreifelses and

---

[1] *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997).

[2] *Coral Prod. Corp. v. Central Resources*, 273 Neb. 379, 730 N.W.2d 357 (2007).

Otoe County contend that the district court erred in finding that the mutual impact easement language in § 501.03(9)(A) of the zoning regulations was an improper delegation of legislative authority.

█ The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.[3] The burden of demonstrating the constitutional defect rests with the challenger.[4] To successfully challenge the validity of a zoning ordinance, the party challenging must prove that the conditions imposed by the city in adopting the zoning ordinance were unreasonable, discriminatory, or arbitrary, and that the regulation bears no relationship to the purpose sought to be accomplished by the ordinance.[5]

Coffey contends that the district court correctly determined that the mutual impact easement requirement in the zoning regulations constituted an unconstitutional delegation of legislative authority. In general, Coffey claims that the provision in question violates due process because it gives owners of animal feeding and waste handling facilities the ability to arbitrarily and capriciously refuse the granting of an impact easement and, as a result, restrict Coffey's ability to use his land.

The starting points for analysis of this issue are the U.S. Supreme Court's opinions in *Eubank v. Richmond*[6] and *Cusack Co. v. City of Chicago*.[7] In *Eubank*, an ordinance was enacted that required the city's building committee to establish setback lines for a given piece of property whenever requested to do so by two-thirds of the adjacent property owners. The Court ruled that this ordinance was void. The Court stated that under the ordinance, "[o]ne set of owners determine[s] not only the extent of use but the kind of use which another set

---

[3] *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002); *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995).

[4] *Maxon v. City of Grand Island*, 273 Neb. 647, 731 N.W.2d 882 (2007).

[5] *Gas 'N Shop v. City of Kearney, supra* note 3.

[6] *Eubank v. Richmond*, 226 U.S. 137, 33 S. Ct. 76, 57 L. Ed. 156 (1912).

[7] *Cusack Co. v. City of Chicago*, 242 U.S. 526, 37 S. Ct. 190, 61 L. Ed. 472 (1917).

of owners may make of their property."[8] The Court explained that owners who have the authority to establish the line could do so based on their own interest, caprice, or taste, and "[i]t is hard to understand how public comfort or convenience, much less public health, can be promoted by a line which may be so variously disposed."[9]

Five years after *Eubank*, in *Cusack Co.*,[10] the Court upheld a city ordinance that prohibited the construction of billboards in residential areas without the consent of the owners of a majority of the frontage property on the block in which the billboard was to be erected. The corporation seeking to construct the billboard argued that the ordinance was "a delegation of legislative power to the owners of a majority of the frontage of the property in the block 'to subject the use to be made of their property by the minority owners of property in such block to the whims and caprices of their neighbors.'"[11]

The Court rejected this argument and distinguished *Cusack Co.* from its previous holding in *Eubank*. The Court explained that

> [a] sufficient distinction between the ordinance [in *Eubank*] and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we

---

[8] *Eubank v. Richmond, supra* note 6, 226 U.S. at 143.

[9] *Id.*, 226 U.S. at 144. See, also, *Seattle Trust Co. v. Roberge*, 278 U.S. 116, 49 S. Ct. 50, 73 L. Ed. 210 (1928).

[10] *Cusack Co. v. City of Chicago, supra* note 7.

[11] *Id.*, 242 U.S. at 528.

have seen, a familiar provision affecting the enforcement of laws and ordinances.[12]

■ From these cases, courts have derived a well-recognized, general rule for determining whether a consent provision violates due process as an unlawful delegation of legislative authority. If the action of a property owner has the effect of legislation in that the action *creates* the restriction or prohibition, then the ordinance or statute constitutes an unlawful delegation of legislative authority. But, if the consent is used for no other purpose than to *waive or modify* a restriction which the governing body has lawfully created and has provided for such a waiver or modification by those most affected, then the consent is regarded as being within constitutional limitations.[13]

■ As the Court of Appeals for the District of Columbia explained, "[t]he Supreme Court has long held that a municipality may prohibit a disfavored use of property but permit private citizens to waive that prohibition and consent to the use."[14]

> In order for a legislative delegation to private citizens to survive a due process challenge, the Court instructs that two criteria must be satisfied. First, the underlying exercise of authority must be a reasonable regulation within the power of the government. . . . Second, the legislature's restriction must be in the form of a general prohibition, and the delegation must be in the form of permitting private citizens to waive the protection of that prohibition.[15]

We recognize and agree with that articulation of the applicable due process principles. Thus, the zoning regulation at issue in this case will survive Coffey's constitutional challenge if the regulation enacts a general prohibition that would be an otherwise reasonable and valid regulation and then delegates to

---

[12] *Id.*, 242 U.S. at 531.

[13] *O'Brien v. City of St. Paul*, 285 Minn. 378, 173 N.W.2d 462 (1969). See, e.g., *Cross v. Bilett*, 122 Colo. 278, 221 P.2d 923 (1950); *Arno v. Alcoholic Beverages Control Commission*, 377 Mass. 83, 384 N.E.2d 1223 (1979); *Robwood Adv. Assoc. v. Nashua*, 102 N.H. 215, 153 A.2d 787 (1959); *Davis v. Blount County Beer Bd.*, 621 S.W.2d 149 (Tenn. 1981).

[14] *Silverman v. Barry*, 845 F.2d 1072, 1086 (D.C. Cir. 1988).

[15] *Id.* (citation omitted).

private citizens the mere opportunity to waive that prohibition. Here, we find that § 501.03(9)(A) meets this standard and is a constitutionally permissible legislative delegation.

The Nebraska Legislature has given Otoe County the power to pass zoning ordinances "for the purpose of promoting the health, safety, morals, convenience, order, prosperity, and welfare of the present and future inhabitants of Nebraska."[16] Otoe County, in accordance with this authority, adopted a comprehensive zoning plan and zoning regulations. As the Otoe County zoning regulation states, the intent of the general agricultural district is "to preserve and protect land best suited for agricultural uses by *preventing or regulating* the introduction, encroachment and location of . . . non-agricultural uses, including non-farm residential uses."[17] Otoe County accomplished this intent by, among other things, enacting § 501.03(9)(A) which, in general, prohibits the construction of single-family dwellings within certain distances of animal feeding and waste handling facilities, unless a mutual impact easement is obtained.

Had Otoe County desired to do so, it could have adopted a regulation, without the option of a mutual impact easement, that absolutely prohibited the construction of single-family dwellings within the setback distance set forth in the regulations. Stated differently, absolutely prohibiting the construction of single-family dwellings within the distances specified in the regulations would have been a reasonable setback and a valid exercise of Otoe County's police power.[18]

Coffey argues, however, that Otoe County did not intend to absolutely prohibit the construction of single-family dwellings within one-half mile of existing animal feeding or waste handling facilities. Rather, Coffey suggests that by creating the setback provision, Otoe County simply intended to regulate such construction. In support of this argument, Coffey notes

---

[16] Neb. Rev. Stat. § 23-114.03 (Cum. Supp. 2006).

[17] § 501.01 (emphasis supplied).

[18] See Neb. Rev. Stat. § 23-114 et seq. (Reissue 1997 & Cum. Supp. 2006). See, also, *Schaffer v. City of Omaha*, 197 Neb. 328, 248 N.W.2d 764 (1977); *City of Beatrice v. Williams*, 172 Neb. 889, 112 N.W.2d 16 (1961).

that single-family dwellings are listed as a permitted principal use in the general agricultural district.

We are not persuaded by Coffey's argument. Although the zoning regulations contain a broad statement that single-family dwellings are a permitted principal use in the general agricultural district, § 501.03(9)(A) expressly limits this broad statement. Section 501.03(9)(A) provides, in relevant part, that

> [single-family] dwellings, if not on the same lot with and not of the same ownership as any existing confined animal feeding use, . . . any existing intensive animal feeding use, . . . or any waste handling facility, . . . *shall be separated from such use* by the minimum distance specified in Table 501.05 [(one-half mile in this case)].

It is clear from this language that single-family dwellings are not allowed within specified distances of animal feeding and waste handling facilities. And this prohibition is entirely consistent with Otoe County's stated intent for the creation of the general agricultural district, "to preserve and protect land best suited for agricultural uses."[19]

Notwithstanding the absolute prohibition set forth in the beginning of § 501.03(9)(A), the second portion of § 501.03(9)(A) provides that this absolute prohibition can be overcome, but only if both parties are able to agree to a mutual impact easement. However, if no agreement is reached, the prohibition remains in effect.

The regulations at issue simply afford the owners of animal feeding and waste handling facilities a limited opportunity to waive a restriction created by Otoe County, just as the ordinance in *Cusack Co.*[20] provided one-half of the property owners with the power to waive the billboard restriction. And since the property owners in *Cusack Co.* were not empowered to make the law and force it upon others, because the billboard prohibition remained in effect if they chose not to exercise their waiver power, neither are owners of animal feeding and waste handling facilities so empowered by the fact that Otoe County's restriction remains in effect if the owners choose not to exercise the

---

[19] § 501.01

[20] *Cusack Co. v. City of Chicago, supra* note 7.

limited waiver power. In light of the foregoing discussion, we conclude that the mutual impact easement language in Otoe County's zoning regulations is not an unconstitutional delegation of legislative authority, and the district court erred in concluding otherwise.

In arguing to the contrary, Coffey relies on a 1907 opinion by this court, *State v. Withnell*.[21] In *Withnell*, a gas company applied for a permit to construct a gas storage facility. The application complied with all of the regulations except for a requirement that the gas company obtain the written consent of all the property owners within 1,000 feet of the site of the proposed facility. The application was denied because the gas company failed to acquire the necessary consent. The gas company challenged the validity of the consent requirement, and this court agreed, concluding that the ordinance, "in so far as it requires the written consent of the property owners, is void."[22]

*Withnell*, however, is distinguishable from the present case. In *Withnell*, this court concluded that the ordinance was not intended to be prohibitory. It was an unreasonable exercise of the police power because it involved delegating a balance between an "indispensable" public utility and the risk to public safety it represented, which we held to be undelegable.[23] Such is not the case here. And in any event, to the extent our analysis in *Withnell* is inconsistent with the later decisions of the U.S. Supreme Court, the Supreme Court's exposition of the Due Process Clause clearly controls.

Our conclusion that the regulation at issue is constitutional is dispositive of this appeal, and therefore, we need not address Coffey's assignments of error.

## CONCLUSION

We conclude that the district court erred in finding that the mutual impact easement language in Otoe County's zoning regulations constituted an unlawful delegation of legislative

---

[21] *State v. Withnell*, 78 Neb. 33, 110 N.W. 680 (1907).

[22] *Id.* at 39, 110 N.W. at 682.

[23] *Id.* at 35, 110 N.W. at 681.

authority. Accordingly, we reverse the judgment and remand the cause to the district court with directions to affirm the ruling of the Otoe County Board of Adjustment.

REVERSED AND REMANDED WITH DIRECTIONS.

CONNOLLY, J., not participating.