Dowd Grain Company, Inc., a Nebraska corporation,
appellant, v. County of Sarpy, a corporate
body politic, appellee.

___ N.W.2d ___

Filed August 14, 2015.    No. S-14-611.

1. **Constitutional Law: Ordinances.** The constitutionality of an ordinance presents a question of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Zoning: Ordinances: Presumptions: Proof.** The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.
4. **Constitutional Law: Zoning: Ordinances: Proof.** The burden of demonstrating a constitutional defect in a zoning ordinance rests with the challenger.
5. **Municipal Corporations: Zoning: Ordinances: Proof.** To successfully challenge the validity of a zoning ordinance, the party challenging must prove that the conditions imposed by the city in adopting the zoning ordinance were unreasonable, discriminatory, or arbitrary, and that the regulation bears no relationship to the purpose sought to be accomplished by the ordinance.
6. **Zoning: Legislature.** Where the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control.
7. **Special Legislation.** The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants special favors to a specific class. A legislative act constitutes special legislation if it either (1) creates an arbitrary and unreasonable method of classification or (2) creates a permanently closed class.
8. ____. A special legislation analysis focuses on a legislative body's purpose in creating a challenged class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation.

9. **Constitutional Law: Statutes: Special Legislation.** When the Legislature confers privileges on a class arbitrarily selected from many who are standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution.

10. **Special Legislation: Public Policy.** To be valid, a legislative classification must rest upon some reason of public policy, some substantial difference in circumstances, which would naturally suggest the justice or expediency of diverse legislation regarding the objects to be classified.

11. **Special Legislation.** The Legislature has the power to enact special legislation where the subject or matters sought to be remedied could not be properly remedied by a general law and where the Legislature has a reasonable basis for the enactment of the law.

12. ____. Legislative classifications must be real and not illusive; they cannot be based on distinctions without a substantial difference. The distinctive treatment must bear some reasonable relation to the legitimate objectives and purposes of the legislative act. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class concerning the purpose of the act.

13. **Special Legislation: Words and Phrases.** A closed class is one that limits application of the law to a present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development.

14. **Special Legislation.** Generally, a class of property owners in a certain geographic area cannot form a closed class.

15. **Statutes: Special Legislation.** In determining whether a statute legitimately classifies, a court must consider the actual probability that others will come under the act's operation. If the prospect is merely theoretical, and not probable, the act is special legislation.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, and Duane J. Dowd for appellant.

L. Kenneth Polikov, Sarpy County Attorney, and Michael A. Smith for appellee.

HEAVICAN, C.J., CONNOLLY, STEPHAN, MILLER-LERMAN, and CASSEL, JJ.

Cassel, J.

# I. INTRODUCTION

The County of Sarpy revised an overlay zoning ordinance to exempt properties platted before the effective date of the original ordinance. An owner of nonexempt property sought a judgment declaring the exemption unconstitutional as special legislation. The owner now appeals from a judgment for the county. Because the exemption did not create a closed class and its application was not arbitrary or unreasonable, we affirm the judgment.

# II. BACKGROUND

## 1. March 9, 2004, Ordinance

On March 9, 2004, the Sarpy County Board of Commissioners supplemented the Sarpy County zoning ordinances by adopting an overlay district zoning ordinance (overlay ordinance). In effect, the overlay ordinance imposed additional regulations on land along a specified road corridor. These regulations included design guidelines.

The original overlay ordinance applied only to future developments. It stated that "[t]he design guidelines are applicable for new development proposals within the area of application including plats, zoning changes or site plan review."

The Nebraska Court of Appeals considered a challenge to the applicability of the original overlay ordinance.[1] The court held that building permits constituted "'new development proposals'"[2] under the plain language of the ordinance. The court further reasoned that an administrative replat and a site development plan filed after March 9, 2004, were new development proposals to which the design guidelines applied.

---

[1] See *Dowd Grain Co. v. County of Sarpy Bd. of Adj.*, No. A-06-681, 2008 WL 2511150 (Neb. App. June 24, 2008) (selected for posting to court Web site).

[2] *Id.* at *4.

## 2. 2007 REVISION

In May 2007, the Sarpy County Board of Commissioners adopted a resolution amending the overlay ordinance. The revised ordinance contained a subsection designated "33.3 Project Application and Exceptions" (exemption), which stated that the overlay ordinance applied, in part, to the following:

33.3.1 Any new development requiring a building permit built on land within the boundaries of the HC Highway Corridor Overlay District after the effective date of this Ordinance, except any land that was platted prior to March 9, 2004; provided however, that land within the boundaries of the HC Highway Corridor Overlay District that was zoned other than agricultural prior to March 9, 2004[,] that was part of a Phased Development shall also be excepted.

(a) Replats, lot line adjustments, and lot consolidations of such platted properties shall remain excepted.

(b) Phased Developments shall m[e]an property that was, at a minimum, preliminary platted and at least a part of the property within the preliminary plat was final platted.

Thus, under the exemption, any land platted prior to March 9, 2004, did not have to comply with the design guidelines contained in the overlay ordinance.

## 3. PLEADINGS

Dowd Grain Company, Inc. (Dowd Grain), brought a declaratory judgment action against the county, claiming that the exemption was unconstitutional. Dowd Grain alleged that it owned real property subject to the overlay ordinance but not qualifying for the exemption. It claimed that its property was similarly situated to the exempted property. And it asserted that the exemption created special privileges and immunities in favor of the class of real property exempted from enforcement of the overlay ordinance, in violation of Neb. Const. art. III, § 18. Dowd Grain sought a declaration that the exemption was unconstitutional.

The county filed a responsive pleading. It alleged that the property exempted from the overlay ordinance formed a legitimate class. The exemption, it claimed, served a legitimate governmental purpose. This purpose was to "protect[] from harm property owners who have substantially changed position in good-faith reliance upon existing zoning by incurring substantial expenses related to construction and by incurring financial obligations to third parties."

### 4. Evidence at Trial

Several matters were undisputed at trial:

- Properties located within the overlay district that were not platted prior to March 9, 2004, could not be added to the class created by the exemption.
- The exemption's language prevented expansion of the exempt geographic area.
- Dowd Grain spent over $500,000 grading and preparing its property for development.

Other evidence focused on the effect of failing to exempt properties already under development. The district court received into evidence a partial transcript of a May 8, 2007, meeting of the county's board of commissioners. This meeting addressed the then-proposed amendments to the overlay ordinance.

At this meeting, several business representatives testified regarding the potential adverse effects. One representative stated that the proposed amendment to the overlay ordinance was consistent with the representations made to and relied upon by that business. An attorney for a different business stated that imposition of restrictions on land that had been purchased and planned for a number of years would undermine the business' ability to grow as it intended. And an attorney speaking on behalf of a partnership that was currently in the process of building in the affected area testified that the partnership would suffer damages if the county board voted against the "grandfathering clause." The attorney explained that the partnership had already laid the footings for its

building and placed steel framework and that if the grand-fathering language was stricken, the partnership would have to redo that work at a cost of about $1 million.

### 5. DISTRICT COURT'S JUDGMENT

The district court entered judgment in favor of the county. Although other legal issues were raised before the district court, Dowd Grain assigns error only to the court's determination regarding its special legislation claim.

In determining whether the exemption constituted special legislation, the court first considered whether the ordinance created a closed class. The court noted that any replats would change the number of parcels and that any class consisting of property owners in a given area is subject to constant change. The court concluded that the exemption did not create a closed class, reasoning that "[a]lthough . . . the geographic area is restricted, [the court] cannot find that the class is closed as to the number of parcels or the ownership of the property."

The district court further reasoned that even if a closed class were created, there was a reasonable basis for the exemption. The court observed that the county board heard testimony about the harsh effects that the adoption of the overlay ordinance without an exemption would have on certain property owners. The court stated:

> It is clear to this Court that certain property owners within the overlay district relied in good faith on the validity of the exemptions contained in the Ordinance when they made substantial investments in developing their property prior to the Amendment, and were properly exempted from the retroactive effects of the Amendment according to the purposes of the Overlay Ordinance.

The court determined that treating similarly situated property differently was permissible in this case:

> The separate treatment of property owners who had plat-ted prior to March 9, 2004, is proper because they are distinct from property owners who have yet to make

improvements on their land. This distinction bears a reasonable relation to the legitimate purposes of the Overlay Ordinance without penalizing those entities who took action in reliance on previous regulations.

Dowd Grain timely appealed. We moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

## III. ASSIGNMENT OF ERROR

Dowd Grain assigns six errors which can be condensed into one: The district court erred in failing to find that the exemption was special legislation.

## IV. STANDARD OF REVIEW

[1,2] The constitutionality of an ordinance presents a question of law.[4] An appellate court independently reviews questions of law decided by a lower court.[5]

## V. ANALYSIS

### 1. Governing Principles

#### (a) Validity of Zoning Ordinance

[3-6] The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.[6] The burden of demonstrating a constitutional defect in a zoning ordinance rests with the challenger.[7] To successfully challenge the validity of a zoning ordinance, the party challenging must prove that the conditions imposed by the city in adopting the zoning ordinance were unreasonable, discriminatory, or arbitrary, and that the regulation bears no relationship to the purpose sought to be accomplished by the ordinance.[8]

---

[3] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[4] *D-CO, Inc. v. City of La Vista*, 285 Neb. 676, 829 N.W.2d 105 (2013).

[5] *Id.*

[6] *Coffey v. County of Otoe*, 274 Neb. 796, 743 N.W.2d 632 (2008).

[7] See *id.*

[8] *Id.*

Where the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control.[9] These same principles apply when a party challenges the validity of a zoning ordinance on the basis of special legislation.[10]

#### (b) Special Legislation

Neb. Const. art. III, §18, provides in pertinent part that "[t]he Legislature shall not pass local or special laws" which grant "any special or exclusive privileges, immunity, or franchise whatever" and that "[i]n all other cases where a general law can be made applicable, no special law shall be enacted." The special legislation prohibition also applies to municipal ordinances.[11] And a zoning ordinance is a type of municipal ordinance.[12]

[7] The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants special favors to a specific class.[13] A legislative act constitutes special legislation if it either (1) creates an arbitrary and unreasonable method of classification or (2) creates a permanently closed class.[14]

[8-11] A special legislation analysis focuses on a legislative body's purpose in creating a challenged class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation.[15] When the Legislature confers privileges on a class arbitrarily selected from many who are standing in the same relation to the privileges,

---

[9] *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989).

[10] See *Appeal of Apgar From Bd. of Manheim Tp.*, 661 A.2d 445 (Pa. Commw. 1995).

[11] *D-CO, Inc. v. City of La Vista, supra* note 4.

[12] See, generally, Black's Law Dictionary 1857 (10th ed. 2014) (defining "zoning ordinance").

[13] *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013).

[14] *Id.*

[15] *J.M. v. Hobbs*, 288 Neb. 546, 849 N.W.2d 480 (2014).

without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution.[16] To be valid, a legislative classification must rest upon some reason of public policy, some substantial difference in circumstances, which would naturally suggest the justice or expediency of diverse legislation regarding the objects to be classified.[17] Thus, the Legislature has the power to enact special legislation where the subject or matters sought to be remedied could not be properly remedied by a general law and where the Legislature has a reasonable basis for the enactment of the law.[18]

[12] Legislative classifications must be real and not illusive; they cannot be based on distinctions without a substantial difference.[19] The distinctive treatment must bear some reasonable relation to the legitimate objectives and purposes of the legislative act.[20] The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class concerning the purpose of the act.[21]

2. Whether Exemption Is
Special Legislation

(a) Whether Exemption
Created Closed Class

[13] In considering whether the exemption in the revised ordinance is special legislation, we first consider whether it created a closed class. A closed class is one that limits application of the law to a present condition, and leaves no room

---

[16] *Id.*

[17] *Id.*

[18] *Banks v. Heineman, supra* note 13.

[19] *J.M. v. Hobbs, supra* note 15.

[20] *Id.*

[21] *Id.*

or opportunity for an increase in the numbers of the class by future growth or development.[22] The district court concluded that the exemption did not create a closed class. We agree.

The exemption, approved in 2007, excepted property platted prior to March 9, 2004—the date of adoption of the overlay ordinance—from certain of the overlay ordinance's provisions. Dowd Grain argues that the exemption created a permanently closed class. There is no dispute that Dowd Grain's property cannot be added to the class created by the exemption. Nor is there a dispute that the exemption prevented expansion of the geographic area that is exempt from the overlay ordinance. But that does not necessarily mean that the exemption created a closed class.

[14] Generally, a class of property owners in a certain geographic area cannot form a closed class. We previously determined that a class consisting of Nebraska property owners who possessed irrigated property not located within the Upper, Middle, and Lower Republican Natural Resources Districts and who were exempt from an occupation tax under a particular statute was not a closed class.[23] We reasoned that because real property is alienable, the composition of any class consisting of owners of property in a certain area is subject to constant change.[24]

[15] We agree with the district court that the exemption did not create a closed class. The number of parcels within the fixed geographic area is subject to change. And, as in *Kiplinger v. Nebraska Dept. of Nat. Resources*,[25] the owners composing the class can change via a sale of the real property. We are cognizant that in determining whether a statute legitimately classifies, we must consider the actual

---

[22] *Banks v. Heineman, supra* note 13.

[23] See *Kiplinger v. Nebraska Dept. of Nat. Resources*, 282 Neb. 237, 803 N.W.2d 28 (2011), *disapproved on other grounds, Banks v. Heineman, supra* note 13.

[24] See *id.*

[25] *Id.*

probability that others will come under the act's operation; if the prospect is merely theoretical, and not probable, the act is special legislation.[26] The future transfer of property within the exemption's geographic area is certainly probable. Thus, the class is not closed.

### (b) Whether Exemption Created Arbitrary and Unreasonable Method of Classification

The next question is whether the class benefited by the exemption was arbitrarily selected. The district court concluded that the exemption in the revised ordinance was not special legislation because there was a reasonable basis for the exemption. Again, we agree.

The prohibition against special legislation aims to prevent arbitrary classifications that favor select persons or objects while excluding others that are not substantially different in circumstance in relation to the legislation's purpose.[27] The legislative classification must (1) be based on some substantial difference of circumstances or situation that would indicate the justice or expediency of diverse legislation with regard to the objects classified and (2) further a public purpose.[28]

The evidence established substantial differences between those exempted and those who were not. Only those property owners who filed a plat prior to enactment of the overlay ordinance were exempt. The submission of a plat application requires the employment of an engineer, a surveyor, and possibly other professionals. It requires provisions for grading of the property, paving of streets, and the building of storm sewers and water mains. And any easements for utilities must be documented. Thus, the submission of a plat application entails significant expense and planning. To then "change the rules" and subject those property owners to the design

---

[26] See *id.*

[27] See *J.M. v. Hobbs, supra* note 15.

[28] *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995).

requirements contained in the overlay ordinance after they had already submitted a plat based on the absence of those design requirements would be harsh and unfair.

We recognize that other property owners within the overlay district, such as Dowd Grain, may have similarly expended substantial funds and engaged in detailed planning. But limiting the exemption to those property owners who had completed the process of actually submitting a plat is a reasonable distinction. While the solution chosen by the county may not be perfect, perfection is not required. As we noted above, where the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control.[29] We conclude that the exemption contained within the revised ordinance is not unconstitutional.

## VI. CONCLUSION

We conclude that the exemption did not create a closed class, because the number of parcels within the specified geographic area and the owners of the real property are subject to change in the future. We further conclude that there was a reasonable basis for exempting from enforcement of the overlay ordinance those property owners who had submitted a plat for their property prior to enactment of the overlay ordinance, because those property owners were in a substantially different situation from property owners who had not yet completed a plat for their property. Because the exemption was not unconstitutional special legislation, we affirm the district court's judgment.

Affirmed.

McCormack, J., participating on briefs.
Wright, J., not participating.

---

[29] *Giger v. City of Omaha, supra* note 9.