Osorio's failure to so much as allege the necessary elements of relief under the postconviction statutes or § 29-1819.02, we find the district court's failure to articulate its reasoning inconsequential.

## CONCLUSION

We affirm the district court's denial of Chiroy Osorio's motion to withdraw his plea and vacate his conviction.

Affirmed.

———————————

Steven Banks et al., each and all as individuals, property owners, taxpayers, and as supervisors serving districts 1 through 7, all of the County of Knox, and County of Knox, State of Nebraska, appellees and cross-appellants, v. Dave Heineman, Governor, et al., appellants and cross-appellees.

___ N.W.2d ___

Filed August 2, 2013.    No. S-12-723.

1.  **Constitutional Law: Statutes: Appeal and Error.** Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below.
2.  **Constitutional Law: Statutes: Presumptions.** A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality.
3.  **Taxation: Words and Phrases.** An excise tax is a tax imposed on the manufacture, sale, or use of goods or on an occupation or activity, and is measured by the extent to which a privilege is exercised by the taxpayer, without regard to the nature or value of the taxpayer's assets.
4.  **Taxation.** An excise tax is imposed upon the performance of an act.
5.  ____. An excise tax includes taxes sometimes designated by statute or referred to as "privilege taxes," "license taxes," "occupation taxes," and "business taxes."
6.  **Taxation: Property: Valuation.** A property tax is levied on real or personal property, with the amount of the tax usually dependent upon the value of the property.
7.  **Constitutional Law: Intent.** Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.

8. **Constitutional Law.** It is a fundamental principle of constitutional interpretation that each and every clause within a constitution has been inserted for a useful purpose.

9. **Constitutional Law: Courts: Intent.** In ascertaining the intent of a constitutional provision from its language, a court may not supply any supposed omission, or add words to or take words from the provision as framed.

10. **Constitutional Law.** The Nebraska Constitution, as amended, must be read as a whole.

11. **Constitutional Law: Taxation.** The constitutional prohibition against commutation of taxes set forth in Neb. Const. art. VIII, § 4, does not apply to an excise tax.

12. **Constitutional Law: Statutes: Special Legislation.** The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants special favors to a specific class. A legislative act constitutes special legislation if it either (1) creates an arbitrary and unreasonable method of classification or (2) creates a permanently closed class.

13. **Special Legislation: Words and Phrases.** A closed class is one that limits the application of the law to a present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development.

14. **Special Legislation.** The Legislature has the power to enact special legislation where the subject or matters sought to be remedied could not be properly remedied by a general law and where the Legislature has a reasonable basis for the enactment of the law.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Reversed and remanded with directions.

Jon Bruning, Attorney General, and L. Jay Bartel for appellants.

David A. Domina, of Domina Law Group, P.C., L.L.O., and John Thomas, Knox County Attorney, for appellees.

HEAVICAN, C.J., CONNOLLY, STEPHAN, MILLER-LERMAN, and CASSEL, JJ., and INBODY, Chief Judge.

STEPHAN, J.

Effective July 15, 2010, the Nebraska Legislature changed the manner in which wind energy generation facilities in Nebraska are taxed. The change exempted personal property used by such facilities from the personal property tax and imposed a new tax based on a facility's nameplate capacity. The legislation allowed taxpayers who had paid personal

property tax prior to 2010 to claim a credit against nameplate capacity taxes assessed for 2010 and subsequent years. The appellees, who are taxpayers and residents of Knox County, Nebraska, brought this action challenging the constitutionality of the credit. The district court for Lancaster County held the credit was an unconstitutional commutation of taxes. We reverse, because the credit is not unconstitutional.

## I. BACKGROUND

The plaintiffs below and appellees herein are Steven Banks, Jim Fuchtman, Jerry Hanefeldt, Norman Mackeprang, Virgil Miller, Marty O'Connor, and Rayder Swanson. Each owns real estate and personal property in Knox County and pays taxes on such property. Each is also a member of the Knox County Board of Supervisors. The county itself is also a named plaintiff. We shall refer to them collectively as the "Knox Countians." The defendants below and appellants herein are Dave Heineman, Governor of the State of Nebraska; Don Stenberg, the Nebraska State Treasurer; and Douglas A. Ewald, the Nebraska State Tax Commissioner. We shall refer to them collectively as the "State officials."

The Knox Countians filed a complaint seeking declaratory and injunctive relief with respect to the nameplate capacity tax credit authorized by Neb. Rev. Stat. § 77-6203(5)(b) (Cum. Supp. 2012). The complaint alleged that the credit was unconstitutional and void because it operated to commute a tax in violation of Neb. Const. art. VIII, § 4, and constituted special legislation prohibited by Neb. Const. art. III, § 18. The State officials filed an answer in which they denied that the credit was unconstitutional.

The case was tried on stipulated facts, which we summarize here. Prior to 2010, Nebraska wind energy generation facilities, including towers and turbines, were taxed as personal property and depreciated over a 5-year period. After the 5-year period, no further taxes were collected on the facilities. This taxing system imposed steep upfront costs on wind generators and created budget problems for local governments. To address these issues and as part of legislation passed to encourage the development of wind generation facilities in Nebraska, the

Nebraska Legislature enacted L.B. 1048, which was signed into law and became effective on July 15, 2010.[1]

Section 11 of L.B. 1048 exempted from taxation any personal property "used directly in the generation of electricity using wind as the fuel source."[2] This provision was later amended to clarify that the exemption is for depreciable tangible personal property.[3] The effect of the amendment was to remove all wind generation facilities from the personal property tax rolls.

Sections 12 through 15 of L.B. 1048 simultaneously created a new tax to be imposed on wind generation facilities known as the nameplate capacity tax. Those sections are currently codified at §§ 77-6201 to 77-6204. The nameplate capacity tax is imposed annually on each wind generation facility.[4] The Nebraska Department of Revenue collects the tax and then distributes it to local taxing entities.[5] The Legislature's intent in adopting the nameplate capacity tax was to "replace property taxes currently imposed on wind infrastructure and depreciated over a short period of time in a way that causes local budgeting challenges and increases upfront costs for wind developers."[6] The idea was that the amount of tax paid by wind generators would remain the same, but instead of being concentrated into a 5-year period, it would be spread out over a period of 20 or more years.

Section 77-6203(1) provides: "The owner of a wind energy generation facility annually shall pay a nameplate capacity tax equal to the total nameplate capacity of the commissioned wind turbine of the wind energy generation facility multiplied by a tax rate of three thousand five hundred eighteen dollars per megawatt." "Nameplate capacity" means the "capacity of a wind turbine to generate electricity as measured in megawatts,

---

[1] 2010 Neb. Laws, L.B. 1048 (codified at Neb. Rev. Stat. §§ 77-6201 to 77-6204 (Cum. Supp. 2012)).

[2] See Neb. Rev. Stat. § 77-202(9) (Supp. 2011).

[3] 2011 Neb. Laws, L.B. 360; § 77-202(9).

[4] § 77-6203(5)(b).

[5] §§ 77-6203(5)(a) and 77-6204.

[6] § 77-6201(1).

including fractions of a megawatt."[7] The nameplate capacity tax is imposed "beginning the first calendar year the wind turbine is commissioned."[8] A wind generation facility commissioned prior to July 15, 2010, is subject to the nameplate capacity tax "on and after January 1, 2010."[9] Wind generation facilities owned or operated by certain governmental entities, electric membership associations, and cooperatives are not subject to the nameplate capacity tax.[10]

Elkhorn Ridge Wind, LLC (Elkhorn Ridge), located in Knox County, is the only wind energy generation facility in Nebraska that paid personal property taxes prior to the effective date of L.B. 1048. Elkhorn Ridge began commercial operation in December 2008 and was assessed personal property taxes on its wind generation equipment in 2009. Elkhorn Ridge paid all of its assessed 2009 property taxes, in the amount of $1,594,026. These taxes were distributed to various taxing entities, including Knox County. Without the credit allowed by § 77-6203(5)(b), Elkhorn Ridge would be the only wind energy generation facility required to pay both personal property tax for tax years prior to the effective date of L.B. 1048 and the nameplate capacity tax thereafter.

The Legislature was aware at the time it enacted L.B. 1048 that Elkhorn Ridge had paid personal property taxes on its facility in 2009. In order to ensure that Elkhorn Ridge was similarly situated with all other wind generation facilities in Nebraska and was not double taxed, the Legislature enacted a credit provision, codified at § 77-6203(5)(b), which states:

> The amount of property tax on depreciable tangible personal property previously paid on a wind energy generation facility commissioned prior to July 15, 2010, which is greater than the amount that would have been paid pursuant to [the nameplate capacity tax] shall be credited against any tax due under Chapter 77, and any amount

---

[7] § 77-6202(2).

[8] § 77-6203(5)(b).

[9] *Id*.

[10] § 77-6203(2)(a).

so credited that is unused in any tax year shall be carried
over to subsequent tax years until fully utilized.

For tax year 2010, Elkhorn Ridge reported a nameplate capac-
ity tax of $284,958. Elkhorn Ridge invoked the credit provi-
sion of § 77-6203(5)(b) and was allowed a credit against its
2010 nameplate capacity tax for 2010, and retains a credit
balance based on the amount of 2009 personal property taxes
it paid.

The district court determined that the credit provision of
§ 77-6203(5)(b) "constitutes an improper commutation of taxes
by effectively reducing the 2009 taxes paid by [Elkhorn Ridge]
in Knox County in the form of a post-2009, future credit con-
trary to Neb. Const. art. VIII, § 4," and was therefore unconsti-
tutional and void. The court found it unnecessary to determine
whether the credit was special legislation in contravention of
article III, § 18. It granted declaratory relief, but denied injunc-
tive relief in the absence of any evidence that the State officials
would continue to enforce a law declared to be unconstitu-
tional. The State officials commenced this timely appeal, and
the Knox Countians cross-appealed.

## II. ASSIGNMENTS OF ERROR

The State officials assign that the district court erred in (1)
finding the credit against the nameplate capacity tax granted
by § 77-6203(5)(b) unconstitutionally commuted taxes and (2)
failing to find the credit was not special legislation. On cross-
appeal, the Knox Countians assign the district court erred in
failing to find the credit was special legislation.

## III. STANDARD OF REVIEW

[1,2] Whether a statute is constitutional is a question of law;
accordingly, we are obligated to reach a conclusion indepen-
dent of the decision reached by the court below.[11] A statute is
presumed to be constitutional, and all reasonable doubts will be
resolved in favor of its constitutionality.[12]

---

[11] *In re Interest of C.R.*, 281 Neb. 75, 793 N.W.2d 330 (2011); *Yant v. City of Grand Island*, 279 Neb. 935, 784 N.W.2d 101 (2010).

[12] *Id.*

## IV. ANALYSIS

### 1. Commutation

Subject to exceptions not applicable here, Neb. Const. art. VIII, § 4, provides:

> [T]he Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever.

The State officials argue that this provision applies only to property taxes and that the nameplate capacity tax is not a property tax. The district court rejected this argument. Although it characterized the nameplate capacity tax as an "excise tax," it noted that in *Kiplinger v. Nebraska Dept. of Nat. Resources*,[13] we considered the merits of an argument that an excise tax violated the constitutional prohibition against commutation of taxes and concluded that it did not. Although acknowledging that the question of whether article VIII, § 4, applied to an excise tax was neither raised nor specifically considered by this court in *Kiplinger*, the district court concluded that it was "not dissuaded from following *Kiplinger* and analyzing the nameplate capacity tax credit against Neb. Const. art. VIII, § 4." We now consider the question de novo.

### (a) Nature of Nameplate Capacity Tax

[3-6] An excise tax is a tax imposed on the manufacture, sale, or use of goods or on an occupation or activity, and is measured by the extent to which a privilege is exercised by the taxpayer, without regard to the nature or value of the taxpayer's assets.[14] An excise tax is imposed upon the performance of an act.[15] We have also stated that an excise tax includes

---

[13] *Kiplinger v. Nebraska Dept. of Nat. Resources*, 282 Neb. 237, 803 N.W.2d 28 (2011).

[14] *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012).

[15] *Id.*

taxes sometimes designated by statute or referred to as "privilege taxes," "license taxes," "occupation taxes," and "business taxes."[16] In contrast, a property tax is levied on real or personal property, with the amount of the tax usually dependent upon the value of the property.[17]

The State officials argue that the nameplate capacity tax is an excise tax because it is measured by the productive activity or capacity of a wind generation facility. But the Knox Countians counter that it is not an excise tax because it is not imposed upon an activity, but instead is imposed upon the capacity to generate electricity, whether the equipment is used or not. The Knox Countians contend that because it does not matter whether the equipment is used, the tax is similar to a tax on personal property. But at the same time, they contend that the nameplate capacity tax "does not replace personal property taxes."[18]

We addressed a similar issue in *Kiplinger*. There, the tax at issue was designated as an "occupation tax" and was imposed on the "'activity of irrigation.'"[19] The landowners on whom the tax was imposed argued it was actually a property tax in disguise and as such was improperly imposed for a state purpose. In rejecting this argument, we noted that the tax was not a property tax in part because it was "not dependent upon the value of the land being taxed."[20]

Similarly, it is clear that the nameplate capacity tax here is not dependent upon the value of the wind turbines and other equipment used to generate electricity. Instead, it is generally imposed on the privilege of owning wind generation facilities in Nebraska and is not measured by the value of those assets. For these reasons, we agree with the district court that it is an excise tax.

---

[16] *State v. Galyen*, 221 Neb. 497, 378 N.W.2d 182 (1985).

[17] *Kiplinger, supra* note 13.

[18] Brief for appellees at 30.

[19] *Kiplinger, supra* note 13, 282 Neb. at 243, 803 N.W.2d at 36, quoting Neb. Rev. Stat. § 2-3226.05 (Cum. Supp. 2008).

[20] *Id.* at 251, 803 N.W.2d at 41.

(b) Applicability of Neb. Const.
art. VIII, § 4, to Excise Tax

With the exception of *Kiplinger*, all of our cases applying the constitutional prohibition against the commutation of taxes have involved property taxation.[21] In *Kiplinger*, we implicitly assumed that article VIII, § 4, applied to excise taxes, but we did not decide that issue, because it was not raised. We address it now as an issue of first impression.

[7] Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.[22] It is true, as the Knox Countians argue, that the language of article VIII, § 4, does not expressly differentiate between various types of tax. But its prohibition of the release or discharge of a taxpayer's "proportionate share of taxes" and the commutation of "such taxes" raises a legitimate question as to its scope.[23]

[8,9] It is a fundamental principle of constitutional interpretation that each and every clause within a constitution has been inserted for a useful purpose.[24] In ascertaining the intent of a constitutional provision from its language, a court may not supply any supposed omission, or add words to or take words from the provision as framed.[25] The language of article VIII, § 4, does not prohibit the release, discharge, or commutation of "taxes," but, rather, a taxpayer's "proportionate share" of taxes.

---

[21] See, *Sarpy Cty. Farm Bureau v. Learning Community*, 283 Neb. 212, 808 N.W.2d 598 (2012); *Swanson v. State*, 249 Neb. 466, 544 N.W.2d 333 (1996); *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992); *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991); *Peterson v. Hancock*, 155 Neb. 801, 54 N.W.2d 85 (1952); *Steinacher v. Swanson*, 131 Neb. 439, 268 N.W. 317 (1936); *Woodrough v. Douglas County*, 71 Neb. 354, 98 N.W. 1092 (1904); *State v. Graham*, 17 Neb. 43, 22 N.W. 114 (1885).

[22] *State ex rel. Johnson v. Gale*, 273 Neb. 889, 734 N.W.2d 290 (2007).

[23] Neb. Const. art. VIII, § 4.

[24] *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011); *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006).

[25] *Tilgner, supra* note 24.

That phrase, which we are not free to ignore or disregard, correlates with the requirement of Neb. Const. art. VIII, § 1, that taxes be levied by valuation uniformly and proportionally. We have held that this constitutional provision does not apply to an excise tax.[26]

When article VIII, § 4, was enacted in 1875, property taxes provided the sole means of funding state and local government in Nebraska. In *Woodrough v. Douglas County*,[27] we noted that article VIII, § 4, was taken verbatim from a provision of the Constitution of Illinois which was adopted to address "[a]n evil [which] had grown up in that state which had commenced to break down the principles of uniformity and equality of taxation." Article VIII, § 4, has been amended twice, in 1958 and 1966, and both amendments related to real property.[28]

[10,11] The Nebraska Constitution, as amended, must be read as a whole.[29] Based on the semantic and historical linkage between the prohibition against commutation of a taxpayer's "proportionate share" of taxes in article VIII, § 4, and the uniform and proportionate requirements of article VIII, § 1, we conclude that the scope of the two provisions is the same. We therefore hold that the constitutional prohibition against commutation of taxes set forth in article VIII, § 4, does not apply to an excise tax. To the extent that *Kiplinger* can be read to suggest otherwise, it is disapproved.

## 2. Special Legislation

Because we conclude that the nameplate capacity tax credit does not constitute an unconstitutional commutation of a tax, we must reach the issue not addressed by the district court, which is whether the statute authorizing the credit is special

---

[26] *Galyen, supra* note 16.

[27] *Woodrough, supra* note 21, 71 Neb. at 362, 98 N.W. at 1094.

[28] See, 1957 Neb. Laws, ch. 214, § 1, p. 750; 1965 Neb. Laws, ch. 299, § 1, p. 845.

[29] *State ex rel. Johnson, supra* note 22; *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994).

legislation prohibited by the state constitution. Article III, § 18, provides in relevant part:

> The Legislature shall not pass local or special laws in any of the following cases, that is to say:
>
> . . . .
>
> Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.

[12,13] The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants special favors to a specific class.[30] Generally, a legislative act constitutes special legislation if it either (1) creates an arbitrary and unreasonable method of classification or (2) creates a permanently closed class.[31] A closed class is one that limits the application of the law to a present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development.[32]

[15] The legislation at issue here created a closed class. Section 77-6203(5)(b) limits the availability of the credit to entities which paid personal property taxes on a wind energy generation facility prior to January 1, 2010; Elkhorn Ridge was the only entity that did so. But this does not end the analysis. The Legislature has the power to enact special legislation where the subject or matters sought to be remedied could not be properly remedied by a general law and where the Legislature has a reasonable basis for the enactment of the law.[33]

In *Gossman v. State Employees Retirement System*,[34] we rejected a claim that the State Employees Retirement Act

---

[30] *Kiplinger*, *supra* note 13; *Yant, supra* note 11.

[31] See *id*.

[32] *Kiplinger, supra* note 13.

[33] *Yant, supra* note 11; *State, ex rel. Spillman, v. Wallace*, 117 Neb. 588, 221 N.W.2d 712 (1928).

[34] *Gossman v. State Employees Retirement System*, 177 Neb. 326, 129 N.W.2d 97 (1964).

enacted in 1963 was unconstitutional. The act required a monthly contribution from all employees of 1 percent of their salary. The money was used to provide prior service benefits for certain persons employed on the effective date of the act. An employee alleged this was special legislation because the contribution was earmarked for the benefit of a closed class to which he could not belong. We noted that "any retirement act is 'special' legislation in the sense that it is designed for a particular group of people and for a special purpose" and that "[i]ts purposes cannot be accomplished by a general law applying to all people."[35] We further noted that the prior service benefits were a legitimate objective of retirement legislation and concluded that, viewed in the context of the "whole scheme and purpose of the [State Employees Retirement] Act,"[36] the classification was reasonable and did not violate article III, § 18.

In *State, ex rel. Spillman, v. Wallace*,[37] this court upheld the validity of a statute which required state tuberculosis testing of cattle in specified counties, but made such testing optional in other counties. This court reasoned that the Legislature may enact special legislation where it has a reasonable basis to do so.[38]

More recently, in *Yant v. City of Grand Island*,[39] this court held that a law which provided for the relocation of the Nebraska State Fair from Lincoln to Grand Island did not violate the closed class prohibition of article III, § 18, because the Legislature had a reasonable basis for enacting a special law in furtherance of a legitimate public policy. We reasoned that specification of a single site for the state fair was a legitimate legislative function and that a general law was not feasible because relocation of the fair necessarily involved selecting a single location. We also noted that the law did not confer any

---

[35] *Id.* at 336, 129 N.W.2d at 104.

[36] *Id.*

[37] *Wallace*, *supra* note 33.

[38] *Id.*

[39] *Yant*, *supra* note 11.

special benefit or privilege because the fair was intended to benefit the entire state.

These precedents establish that we must view the nameplate capacity tax credit in the context of the whole scheme and purpose of the broader legislation. The closed class was created by the provision of L.B. 1048 which exempted personal property used for wind energy generation from the personal property tax. When that exemption became effective, Elkhorn Ridge was the only entity which had paid personal property tax on such property, and no other entity could become a member of the class because of the new exemption. The Legislature thus could not enact a general law granting a credit for property tax paid on such property, because only one taxpayer had paid such tax and no others would. Thus, if there were to be a credit, it could apply to only one taxpayer.

The record establishes that the Legislature had a reasonable basis for enacting the credit provision, as it did so in order to address what it correctly perceived as a harsh and unfair consequence of its decision to change the law regarding taxation of property used for wind generation of electricity. The nameplate capacity tax was clearly intended to be instead of, not in addition to, the personal property tax on wind energy generation equipment. But without the credit, Elkhorn Ridge would be required to pay both personal property tax and the nameplate capacity tax on the same equipment. Thus, the credit does not arbitrarily benefit or grant special favors to Elkhorn Ridge, but, rather, achieves tax equity by requiring it to pay only the equivalent of the nameplate capacity tax, in the same manner as all other commercial operators of wind generation facilities.

This court has recognized that the Legislature may legitimately make provision for those adversely affected by a change in the law, although not in the context of a special legislation analysis. We have held that the Legislature may reduce the limitation period for bringing a particular cause of action, but when it does so, it cannot make the new limitation period applicable to existing claims without allowing a reasonable time for parties to bring an action before such claims

are absolutely barred by a new enactment.[40] We examined one such provision in *Macku v. Drackett Products Co.*,[41] which involved a legislative change in the limitation period applicable to product liability actions. The new law provided that, notwithstanding the new limitation period, any person who had a claim on the date of enactment of the new law had 2 years from that date to commence an action.[42] We concluded in *Macku* that this provision complied with the Legislature's obligation to provide a reasonable time for persons to file actions which would otherwise be barred by a new law shortening a limitation period.

The class of existing claims as of the date of enactment of a shortened limitation period is necessarily closed, but the Legislature may nonetheless make special provision for such claims in the new law. This does not arbitrarily benefit or grant special favors to the class, but, rather, prevents its members from being treated unjustly by a change in the law. And, just as the Legislature may make provision for a finite class of existing claims when it enacts a new law shortening a limitations period, it has a reasonable basis in furtherance of a legitimate public policy to grant a credit for personal property tax paid prior to the enactment of the new nameplate capacity tax. We do not read Nebraska's constitutional prohibition against special legislation to proscribe the Legislature from enacting a reasonable provision to prevent an unjust result from a change in the law.

## V. CONCLUSION

For the reasons discussed, we independently conclude that the nameplate capacity tax credit currently codified at

---

[40] See, *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994); *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984); *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974), *disapproved on other grounds, Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998).

[41] *Macku, supra* note 40.

[42] See Neb. Rev. Stat. § 25-224(4) (Reissue 2008).

§ 77-6203(5)(b) does not violate either article VIII, § 4, or article III, § 18. Accordingly, we reverse the judgment of the district court and remand the cause with directions to dismiss.

Reversed and remanded with directions.

McCormack, J., participating on briefs.

Wright, J., not participating.

———————————

State of Nebraska, appellee and cross-appellant, v. John Blake Edwards, appellant and cross-appellee.

___ N.W.2d ___

Filed August 2, 2013.    No. S-12-777.

1. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

2. **Prosecuting Attorneys: Appeal and Error.** A motion for the appointment of a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, a ruling on such a motion will not be disturbed on appeal.

3. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

4. **Jury Instructions.** Jury instructions are not prejudicial if they, when taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence.

5. **Criminal Law: Proof.** The State carries the burden to prove all elements of the crime charged.

6. **Jury Instructions.** An instruction which withdraws from the jury an essential element in the case is prejudicial.

7. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.

8. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

9. **Criminal Law: Entrapment: Estoppel.** The elements of the defense of entrapment by estoppel are (1) that the defendant must have acted in good faith before