J.M., as Guardian and Conservator for his minor child,
C.M., appellant and cross-appellee, v. Billy L.
Hobbs, appellee and cross-appellant.

___ N.W.2d ___

Filed July 18, 2014.    No. S-13-616.

1. **Constitutional Law: Statutes: Appeal and Error.** The constitutionality of
   a statute presents a question of law, which an appellate court independently
   reviews.
2. **Constitutional Law: Statutes: Presumptions.** A court presumes that statutes are
   constitutional and will not strike down a statute unless its unconstitutionality is
   clearly established.
3. **Special Legislation.** A legislative act constitutes special legislation if (1) it cre-
   ates an arbitrary and unreasonable method of classification or (2) it creates a
   permanently closed class.
4. ____. A special legislation analysis focuses on a legislative body's purpose in
   creating a challenged class and asks if there is a substantial difference of circum-
   stances to suggest the expediency of diverse legislation. The prohibition aims to
   prevent legislation that arbitrarily benefits a special class.
5. **Constitutional Law: Statutes: Special Legislation.** When the Legislature con-
   fers privileges on a class arbitrarily selected from many who are standing in the
   same relation to the privileges, without reasonable distinction or substantial dif-
   ference, then the statute in question has resulted in the kind of improper discrimi-
   nation prohibited by the Nebraska Constitution.
6. **Special Legislation: Public Policy.** To be valid, a legislative classification must
   rest upon some reason of public policy, some substantial difference in circum-
   stances, which would naturally suggest the justice or expediency of diverse legis-
   lation regarding the objects to be classified.
7. **Constitutional Law: Special Legislation.** Legislative classifications must be
   real and not illusive; they cannot be based on distinctions without a substantial
   difference. The distinctive treatment must bear some reasonable relation to the
   legitimate objectives and purposes of the legislative act. The question is always
   whether the things or persons classified by the act form by themselves a proper
   and legitimate class concerning the purpose of the act.
8. **Special Legislation: Words and Phrases.** A closed class refers to when a leg-
   islative body limits a law to a present condition, with no opportunity for the
   numbers of the class to increase.
9. **Constitutional Law: Legislature.** The Legislature has broad discretion to
   make statutory classifications, but its discretion is not unlimited. The Nebraska
   Constitution prohibits it from making arbitrary classifications that favor select
   persons or objects while excluding others that are not substantially different in
   circumstance in relation to an act's purpose.

Appeal from the District Court for Lancaster County: Paul
D. Merritt, Jr., Judge. Affirmed.

John W. Ballew, Jr., and Adam R. Little, of Ballew, Covalt & Hazen, P.C., L.L.O., for appellant.

Dana M. London for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, and Miller-Lerman, JJ., and Pirtle and Riedmann, Judges.

Connolly, J.

## I. SUMMARY

Before 2012, under Neb. Rev. Stat. § 81-2032 (Reissue 2008), a Nebraska State Patrol officer's retirement assets had absolute protection from "garnishment, attachment, levy, the operation of bankruptcy or insolvency laws, or any other process of law." Such provisions are called anti-attachment statutes.[1]

But in 2012, the Legislature amended § 81-2032(2) and other anti-attachment statutes to allow a civil judgment to attach to the distributed retirement assets of State Patrol officers and other public employees who have committed six specified crimes—if the public employee was convicted of the crime in a criminal prosecution.[2] The amendment applies retroactively to past civil judgments predicated on such crimes.

The appellant, Billy L. Hobbs, is a retired State Patrol officer who was convicted of one of the specified crimes—first degree sexual assault of a child. J.M., the victim's guardian and conservator, obtained a civil judgment against Hobbs and has twice sought an order in aid of execution. In response to J.M.'s second attempt, after the statute was amended to apply retroactively, Hobbs challenged the constitutionality of the amendment on multiple grounds. The district court determined that the amendment was unconstitutional as special legislation and dismissed J.M.'s motion.

We agree with the court that L.B. 916 arbitrarily benefits the select crime victims of its specified crimes. Simultaneously, L.B. 916 arbitrarily benefits those public employees and

---

[1] *J.M. v. Hobbs*, 281 Neb. 539, 797 N.W.2d 227 (2011).

[2] See, 2012 Neb. Laws, L.B. 916; § 81-2032 (Cum. Supp. 2012).

officers whose retirement assets are not subject to attachment because (1) the act does not apply to their retirement plans or (2) they pleaded no contest or were convicted of a serious crime that is not included in the act. We conclude that under the act's stated purpose of providing compensation to the victims of serious crimes, no substantial difference exists between the favored groups of victims and employees and those victims and employees who do not receive the act's benefits. Because the class members are not substantially different, the act is special legislation. We affirm.

## II. BACKGROUND

In 2006, Hobbs was convicted of first degree sexual assault of a child, C.M., when she was between the ages of 12 and 14. The assaults occurred while Hobbs was married to C.M.'s mother and living with them. A court sentenced Hobbs to 25 to 30 years' imprisonment. J.M. then sued Hobbs on C.M.'s behalf, and a court awarded J.M. a civil judgment of $325,000.

### 1. J.M.'s First Appeal to This Court

In J.M.'s first attempt to obtain an order in aid of execution, he alleged that Hobbs was a judgment debtor and, although incarcerated, was receiving a retirement pension from the State Patrol. Hobbs objected that under § 81-2032, his retirement assets were exempt from legal process. At that time, § 81-2032 provided that "[a]ll annuities or benefits which any person shall be entitled to receive under [the Nebraska State Patrol Retirement Act] shall not be subject to garnishment, attachment, levy, the operation of bankruptcy or insolvency law, or any other process of law whatsoever . . . ." The district court agreed that Hobbs' retirement assets were exempt from process, and we affirmed on appeal.[3]

We noted that under Neb. Rev. Stat. § 25-1572 (Reissue 2008), a court may order the execution of a judgment only against a debtor's nonexempt property. But J.M. relied on

---

[3] *Hobbs, supra* note 1.

Neb. Rev. Stat. § 25-1563.01 (Reissue 2008), which permits a judgment to attach to a judgment debtor's retirement assets except those that are reasonably necessary for the support of the debtor and any beneficiaries. J.M. argued that § 81-2032 only protected the retirement assets that Hobbs was "entitled to receive" and that once the assets were distributed, § 25-1563.01 governed whether the assets were subject to attachment. We rejected that argument.

We concluded that § 81-2032 was the more specific and, therefore, the applicable statute and that it provided broader protections than § 25-1563.01. We explained that the words "annuities" and "benefits" under § 81-2032 referred to required future payments of money. We cited federal and state court decisions rejecting a distinction between owed future payments and distributed payments under similar statutes, even if the statute did not explicitly protect future payments. We agreed that the legislative intent behind anti-attachment statutes is to protect these assets from legal process regardless of whether the payments have become due.

We further agreed with the U.S. Supreme Court that exemptions are justified by broad social policies that take precedence over courts doing equity between particular parties. So a court's carving out of particular exceptions when the exemption is especially inequitable is impracticable. We agreed that any such exceptions should be left to the Legislature.

### 2. Legislature Amends § 81-2032 Retroactively

In 2012, the year after we issued our opinion in J.M.'s first appeal, the Legislature amended § 81-2032 and other anti-attachment statutes for some retirement plans.[4] For retirement plans affected by the amendment, a limited attachment remedy now exists against the retirement assets of a public employee or officer who (1) was convicted of, or pleaded no contest to, one of six enumerated crimes, and (2) found liable for civil damages.[5] The affected retirement plans include the plan for

---

[4] See L.B. 916.

[5] See *id*.

State Patrol officers, and the six enumerated crimes include sexual assault.[6]

After this amendment, J.M., on C.M.'s behalf, filed a new motion for an order in aid of execution. Hobbs challenged the amendment as unconstitutional. As stated, the district court concluded that the statute was unconstitutional as special legislation and dismissed J.M.'s motion.

### 3. Scope of L.B. 916

The amendment to § 81-2032 is representative of the way that L.B. 916 amended anti-attachment statutes for all affected public employees' retirement plans. Subject to assignment under a qualified domestic relations order, an absolute exemption from attachment of retirement assets still exists for most State Patrol officers under § 81-2032(1). But L.B. 916 created six exceptions by adding subsection (2) to the statute:

> (1) Except as provided in subsection (2) of this section, all annuities or benefits . . . shall not be subject to [any] process of law whatsoever and shall not be assignable except to the extent that [they] are subject to a qualified domestic relations order . . . . The payment of any annuities or benefits subject to such order shall take priority over any payment made pursuant to subsection (2) of this section.
>
> *(2) If a member of the retirement system is convicted of or pleads no contest to a felony that is defined as assault, sexual assault, kidnapping, child abuse, false imprisonment, or theft by embezzlement and is found liable for civil damages as a result of such felony, following distribution of the member's annuities or benefits from the retirement system*, the court may order the payment of the member's annuities or benefits . . . for such civil damages, except that [those] reasonably necessary for the support of the member or any of his or her beneficiaries shall be exempt from such payment. . . . The changes made to this section by this legislative bill shall apply to

---

[6] See § 81-2032(2) (Cum. Supp. 2012).

persons convicted of or who have pled no contest to such
a felony and who have been found liable for civil dam-
ages as a result of such felony prior to, on, or after April
7, 2012.

(Emphasis supplied.)

The Nebraska Public Employees Retirement Systems, a state
agency,[7] administers most of the retirement plans affected by
L.B. 916. Those five plans are for county employees,[8] judges,[9]
State Patrol officers,[10] public school employees,[11] and public
employees whose retirement benefits are governed by the State
Employees Retirement Act.[12]

Counties and school districts are, of course, political subdi-
visions.[13] In addition to the plans for county and public school
employees, L.B. 916 applies to the retirement plans covering
employees for three other political subdivisions: employees
of a metropolitan utilities district,[14] police officers in cities of
the first class,[15] and firefighters in cities of the first class.[16]
Finally, L.B. 916 permits a judgment predicated upon one
of the specified crimes to attach to the deferred compensa-
tion plans for employees and elected officials of municipali-
ties, counties, or other political subdivisions—after the funds
are distributed.[17]

But the State Employees Retirement Act explicitly excludes
some state employees from its coverage and implicitly excludes

---

[7] See, L.B. 916, §§ 12, 16, 22, 31, and 42; Neb. Rev. Stat. § 84-1503(1)(a)
(Supp. 2013).

[8] See Neb. Rev. Stat. § 23-2322 (Reissue 2012).

[9] See Neb. Rev. Stat. § 24-710.02 (Cum. Supp. 2012).

[10] See § 81-2032.

[11] See Neb. Rev. Stat. § 79-948 (Cum. Supp. 2012).

[12] See Neb. Rev. Stat. § 84-1324 (Cum. Supp. 2012).

[13] Neb. Rev. Stat. § 13-2401(1) (Reissue 2012).

[14] See Neb. Rev. Stat. § 14-2111(4) (Reissue 2012).

[15] See Neb. Rev. Stat. § 16-1019(6) (Reissue 2012).

[16] See Neb. Rev. Stat. § 16-1038(6) (Reissue 2012).

[17] See Neb. Rev. Stat. § 48-1401(10) (Cum. Supp. 2012).

others by not including them in the definition of an employee covered by the act.[18] So the retirement plans of public employees and officers that are not covered by the State Employees Retirement Act are unaffected by L.B. 916 unless the act otherwise expressly affects their retirement plans. The same is true for the retirement plans of political subdivision employees and officers that are not expressly affected by L.B. 916. For example, L.B. 916 does not affect the legislatively authorized retirement plans for public employees of the State's university[19] and colleges,[20] public health departments,[21] natural resources districts,[22] and most municipal employees.[23] Summed up, political subdivisions and state agencies that are not affected by L.B.916 are free to maintain or adopt anti-attachment provisions that provide absolute protection from legal process for their employees' retirement benefits.

But even for those retirement plans that L.B. 916 expressly affects, the scope of the attachment remedy is quite limited. A judgment creditor must show that an affected public employee was convicted of an enumerated felony *and* found liable for damages in a civil action. A judgment creditor's recovery against the employee in a civil action is insufficient, standing alone, to warrant attachment of a public employee's distributed retirement assets.

The scope of the remedy is also limited by the offender's age. That is, a judgment against a young offender will often lapse because of time constraints. L.B. 916 does not require a retirement plan administrator to make a lump-sum distribution to a plan member to compensate a judgment creditor, and a judgment cannot attach to the public employee's undistributed retirement assets. Instead, a judgment creditor must wait until the employee's assets are distributed in the normal course of

---

[18] See Neb. Rev. Stat. § 84-1301(9) (Supp. 2013).

[19] See Neb. Rev. Stat. § 85-106 (Reissue 2008).

[20] Neb. Rev. Stat. § 85-320 (Reissue 2008).

[21] Neb. Rev. Stat. § 71-1631(13) (Reissue 2009).

[22] See Neb. Rev. Stat. § 2-3228(1) (Reissue 2012).

[23] See Neb. Rev. Stat. §§ 14-567 and 19-3501 (Reissue 2012).

events. Yet, a judgment becomes dormant if no execution has been issued within 5 years and can only be revived within 10 years of becoming dormant.[24]

### 4. Legislative History

A court may review the legislative history of a statute or ordinance when considering a special legislation challenge.[25] In concluding that the selection of only six felonies under § 81-2032 constitutes special legislation, the district court reviewed the legislative history of L.B. 916. The court noted that many statements by the bill's introducer, Senator Colby Coash, showed that the Legislature intended to provide compensation to the victims of crimes that were heinous, serious, or egregious. We turn now to that history.

### (a) Under the Amendment, a Judgment Only Attaches to Distributed Retirement Assets

L.B. 916 was originally introduced as 2012 Neb. Laws, L.B. 973,[26] and later incorporated into L.B. 916.[27] As introduced, L.B. 973 would have permitted a judgment to attach to an affected employee's undistributed retirement assets as soon as a victim obtained a civil judgment, except to the extent that the funds were needed for the reasonable support of the employee or his beneficiaries. So a judgment creditor would not have to wait until the funds were distributed.

But at the Nebraska Retirement Systems Committee hearing for L.B. 916, a representative for the Nebraska Public Employees Retirement Systems stated that permitting

---

[24] Neb. Rev. Stat. §§ 25-1420 and 25-1515 (Reissue 2008); *Buffalo County v. Kizzier*, 250 Neb. 180, 548 N.W.2d 757 (1996).

[25] See, e.g., *D-CO, Inc. v. City of La Vista*, 285 Neb. 676, 829 N.W.2d 105 (2013); *Hug v. City of Omaha*, 275 Neb. 820, 749 N.W.2d 884 (2008); *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000).

[26] See Nebraska Retirement Systems Committee Hearing, L.B. 973, 102d Leg., 2d Sess. (Jan. 12, 2012).

[27] See Legislative Journal, Chronology of Bills, 102d Leg., 2d Sess. 136 (2012).

collection actions against retirement funds before they are distributed would create tax and payment complexities for the State. Because the retirement funds represent deferred income, garnishments of untaxed income to satisfy judgments would require the plan member to pay income tax. For defined benefit plans, preretirement disbursements would require an expert's actuarial recalculations of the member's earned benefit. Another problem would arise if a judgment creditor could garnish both vested and nonvested pension funds because, with limited exceptions (death, disability, or retirement), plan members can obtain their own contributions only if they take money from their retirement funds.[28]

In short, unless the Legislature limited the law to distributed retirement funds, the agency would incur costs for additional computer programming and obtaining actuarial recalculations.[29] Moreover, the executive director of the retirement plan for Omaha school teachers explained that its plan would lose its tax-deferred status if it distributed funds to an employee who was still an active member.[30] The Legislature specifically amended the bill to make retirement assets in the affected plans subject to attachment only after they are distributed.[31]

### (b) The Legislature Intended the Amendment to Provide Compensation for the Victims of Serious Crimes

Senator Coash's statement of intent provides that L.B. 973 was enacted to give courts "an optional means of providing civil restitution to victims of particularly *heinous* crimes."[32]

---

[28] Nebraska Retirement Systems Committee Hearing, 102d Leg., 2d Sess. 11-12 (Jan. 31, 2012).

[29] See *id*.

[30] See *id*.

[31] See Amend. 1739, L.B. 916, Nebraska Retirement Systems Committee, 102d Leg., 2d Sess. (Feb. 14, 2012).

[32] See Introducer's Statement of Intent, L.B. 973, Nebraska Retirement Systems Committee, 102d Leg., 2d Sess. (Jan. 31, 2012) (emphasis supplied).

Specifically, the bill authorizes a judgment to attach to public employee's retirements assets if the employee has pleaded no contest or been convicted of "felony assault, sexual assault, kidnapping, child abuse, false imprisonment, or theft by embezzlement."[33]

During the committee hearing, Senator Coash explained the bill's purpose as follows:

This is a bill to provide justice by way of restitution to victims of *heinous crimes*, specifically to victims who have been denied payment from their aggressors because his or her assets are sheltered in their [sic] public employee retirement pensions and/or benefits, even after such pensions or benefits have been distributed from the retirement plan to employees. [A] judge may order payment if . . . [t]he public employee has been convicted of or pleads no contest in criminal court to an *egregious* felony. And you'll note that these crimes listed, such as assault, kidnapping and theft, leave behind a living, aggrieved victim. These exceptions cannot be employed, by example, for those grieving a murder victim. Second criteria, the employee [must be] found liable in a civil court following the conviction. . . . [L]et's pretend that [a victim] has survived her attack [and if the defendant] was not convicted in criminal court but was only found liable in civil court, he would not . . . fit in this exemption. . . . We purposely set the bar for this very high. You've got to get through criminal court and been convicted by a jury . . . in these very narrow crimes. . . . I understand that the state continues to have very valid reasons to protect pensions, which I fully support. I want to ensure that this policy change truly protects both the vulnerable victims of *serious* crime and the innocent family members of those that are convicted, and I have purposely set that threshold high so as to ensure restitution for the most aggrieved victims whose well-being is forever affected

---

[33] *Id*.

by the crime and who may have the greatest need for that financial restitution.[34]

When asked why his bill did not include victims of a murder, Senator Coash stated the following:

Well, we discussed that quite a bit but in the case of a murder there is no living victim that needs the funds . . . we wanted to keep this narrow. We wanted to make sure that these funds were accessed for the actual victim, not the victim's family. So we made a conscious decision to leave those out.[35]

J.M., C.M., and J.M.'s attorney all testified about this specific case in support of the bill. J.M.'s attorney stated that he had approached Senator Coash about the bill and worked with him in drafting it. He disagreed with our decision in J.M.'s first appeal and argued that he should be able to attach a judgment to distributed retirement assets. A senator specifically asked whether the attorney could attach Hobbs' retirement assets if this bill passed. He said yes, because in working with Senator Coash, he "wanted to make sure that this [legislation] applied to this particular judgment."[36] He explained that the attachment remedy "was designed to be narrow. It's not my intent to make this any more encompassing than absolutely necessary to get this young woman some compensation out of this fund . . . ."[37]

## III. ASSIGNMENTS OF ERROR

J.M. assigns that the court erred in concluding that § 81-2032(2) was unconstitutional as special legislation and in overruling his motion for an order in aid of execution.

## IV. STANDARD OF REVIEW

[1] The constitutionality of a statute presents a question of law, which we independently review.[38]

---

[34] Nebraska Retirement Systems Committee Hearing, 102d Leg., 2d Sess. 2-3 (Jan. 31, 2012) (emphasis supplied).

[35] *Id.* at 5.

[36] *Id.* at 7.

[37] *Id.* at 8.

[38] See *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013).

## V. GOVERNING PRINCIPLES

[2] We presume that statutes are constitutional and will not strike down a statute unless its unconstitutionality is clearly established.[39]

Under the special privileges and immunities clause of Neb. Const. art. III, § 18,

> [t]he Legislature shall not pass local or special laws in any of the following cases[:]
>
> . . . .
>
> Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.

[3,4] A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.[40] A special legislation analysis focuses on a legislative body's purpose in creating a challenged class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation.[41] The prohibition aims to prevent legislation that arbitrarily benefits a special class.[42]

[5,6] When the Legislature confers privileges on a class arbitrarily selected from many who are standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution.[43] To be valid, a legislative classification must rest upon some reason of public policy, some substantial difference in circumstances, which would naturally suggest the justice or expediency of diverse legislation regarding the objects to be classified.[44]

---

[39] See *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006).

[40] *D-CO, Inc.*, *supra* note 25.

[41] *Id*.

[42] *Id*.

[43] *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[44] *D-CO, Inc.*, *supra* note 25.

[7] And legislative classifications must be real and not illusive; they cannot be based on distinctions without a substantial difference.[45] The distinctive treatment must bear some reasonable relation to the legitimate objectives and purposes of the legislative act.[46] The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class concerning the purpose of the act.[47] Here, the purpose is to provide compensation to the victims of serious crimes.

## VI. ANALYSIS

[8] Initially, we clarify that Hobbs does not, and could not, claim that L.B. 916 created a closed class. A closed class refers to when a legislative body limits a law to a present condition, with no opportunity for the numbers of the class to increase.[48] Although the attachment remedy is limited in scope, the probability that other judgment creditors will come under the act's operation is more than theoretical.[49] So the only issue here is whether the classes benefited by the remedy were arbitrarily selected.

The district court determined that § 81-2032(2), as amended by L.B. 916, is special legislation because nothing in the legislative history explained why the six enumerated felonies—assault, sexual assault, kidnapping, child abuse, false imprisonment, or theft by embezzlement—justified favored treatment for the victims of these crimes but not the victims of other serious crimes. The court concluded that the Legislature had arbitrarily granted a benefit to the victims of the six enumerated crimes and excluded others who were not substantially different under the act's purpose.

---

[45] *Id.*

[46] See *id.*

[47] *Id.*

[48] See *Kiplinger v. Nebraska Dept. of Nat. Resources*, 282 Neb. 237, 803 N.W.2d 28 (2011), *disapproved on other grounds*, *Banks*, *supra* note 38.

[49] See *id.*

J.M first contends that § 81-2032(2) is a law of general application. J.M. argues that under *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*,[50] if a statute has a legitimate purpose and treats all of the *selected* class members uniformly, it is not special legislation.

We reject this argument and J.M.'s interpretation of *Nebraska Mortgage Finance Fund*. There, during a period of high mortgage rates, the Legislature made available tax-free and low-interest revenue bonds to private mortgage lenders to encourage them to make affordable mortgage loans to persons with low and moderate incomes. The Legislature intended for the difference between what the lenders and mortgagors paid in interest to pay for the program. The legislative history showed that high mortgage rates had caused a serious shortage of decent, affordable housing near workers' jobs and had contributed to blight in cities. The fund for the bonds was overseen by a quasi-corporation operating as a governmental body with appointed officers.

We concluded that the act was a law of general applicability, not a special privilege for a select few, because the mortgage funds were equally available to all persons of low and moderate income across the state. We reasoned that the benefit received by private lending institutions from having the revenue bonds pass through them for low-interest mortgages was incidental to the act's public purpose: "The vital point in all such disbursements is whether the purpose is public. If it is, it does not matter whether the agency through which it is dispensed is public or not."[51] We concluded that the entire state benefited from the availability of decent housing. In upholding the act, we stated the following principles:

> "'An act is general, and not special or local, if it operates alike on all persons or localities of a class, or who are brought within the relations and circumstances provided

---

[50] *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979).

[51] *Id.* at 460, 283 N.W.2d at 22.

for, if the classification so adopted by the legislature has a basis in reason, and is not purely arbitrary. . . . "If a law affects equally all persons who come within its operation it cannot be local or special . . . ." . . . "A law is not local or special in a constitutional sense that operates in the same manner *upon all persons in like circumstances*." "General laws are those which relate to or bind all within the jurisdiction of the law-making power, and if a law is general and operates uniformly *and upon all brought within the relation and circumstance for which it provides* it is not a local or special law in the constitutional sense." "[52]

J.M.'s argument hinges on a single sentence in this passage: " " " "If a law affects equally all persons who come within its operation it cannot be local or special . . . ." " " " But the passage also states that a law must operate uniformly for all persons in like circumstances under the act's purpose. So, we clearly meant that a court must consider all persons standing in similar circumstances under an act's purpose when determining whom the law effects and whether the law operates uniformly.

[9] When read in context, *Nebraska Mortgage Finance Fund* embodies this general principle: The Legislature has broad discretion to make statutory classifications, but its discretion is not unlimited. The Nebraska Constitution prohibits it from making arbitrary classifications that favor select persons or objects while excluding others that are not substantially different in circumstance in relation to an act's purpose. This interpretation is consistent with the principles that we set out above. To accept J.M.'s argument would render the special legislation provision meaningless.

Next, we turn to J.M.'s alternative argument. J.M. contends that the defined class of victims rests on a real and substantial difference from other crime victims. He argues that the Legislature correctly recognized that the victims of the six

---

[52] *Id*. at 454-55, 283 N.W.2d at 19-20 (emphasis supplied).

enumerated crimes have suffered tremendous trauma and have the greatest need to recover a civil judgment against their perpetrators who were public employees. He argues that these victims often must pay for years of treatment to deal with the effects of the crime.

But Hobbs contends that there is "no substantial difference between the classes of enumerated and unenumerated felonies that would explain why one class's pension fund is protected from attachment while the other's is not."[53] He argues that the purpose of L.B. 916 is to provide compensation to the victims of serious crimes, yet it excludes the victims of many serious crimes: e.g., murder, arson, robbery, and incest. He contends that through the enumerated felonies, L.B. 916 arbitrarily benefits (1) select victims who can collect a judgment from a public employee's retirement assets and (2) those pensioners who are convicted of other serious crimes yet are protected from attachment. We agree.

It is clear that the Legislature's desire both to provide relief for victims like C.M. and to protect the retirement assets of public employees in most circumstances explains its favored treatment of select victims—and its consequential favored treatment of public employees who have committed other serious crimes. By limiting the crime victims who can use this remedy to a small group in order to protect most public employees' retirement funds, the Legislature has necessarily singled out a select group of offenders whose retirement benefits can be subject to attachment. But despite the Legislature's good intentions, the Constitution requires uniformity of laws:

> "Uniformity [of laws] is required in order to prevent granting to any person, or class of persons, the privileges or immunities which do not belong to all persons. . . . It is because the legislative process lacks the safeguards of due process and the tradition of impartiality which restrain the courts from using their powers to dispense special favors

---

[53] Brief for appellee at 13.

that such constitutional prohibitions against special legislation were enacted."[54]

L.B. 916 cannot evade the special legislation prohibition. The most heinous crime under Nebraska law is capital murder. The victim's survivors frequently suffer real economic consequences and psychological trauma. But the act closes the door to relief for these victims. Moreover, even assuming that distinguishing between living crime victims and a murder victim's family members represents a rational distinction under the bill's purpose of providing compensation to the victims of serious crimes, the court correctly determined that the select class of living victims is arbitrary.

For example, if Hobbs had been C.M.'s father (instead of stepfather), convicted of incest, and found liable for damages in a civil action, C.M.'s trauma from the crime would be the same, if not greater. But she could not collect a judgment from Hobbs' distributed retirement assets. Similarly, we can discern no reason to favor the victims of embezzlement, a property crime, but to exclude the victims of arson. No difference in the crimes' traumatic effects justifies the diverse treatment of these victims.

Nor can we be blind to the Legislature's obvious exclusion of many retirement plans for public employees—over which it has authority—from the effects of L.B. 916. This exclusion further illustrates the arbitrariness of the selected victims who can benefit from the attachment remedy and the selected public employees whose retirement benefits are subject to attachment.

Finally, whether victims of the same crime can attach civil judgments to a public employee's distributed retirement assets will often depend on prosecutorial discretion. For example, if a victim is shot by a public employee but survives, the State might charge an assault or an attempted murder. If the State successfully prosecutes an assault, the victim can seek redress under L.B. 916 because it is an enumerated crime. But if the

---

[54] *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 938, 663 N.W.2d 43, 65 (2003), quoting *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991).

State prosecutes an attempted murder, an absolute exemption from attachment applies. A similar issue could arise if the State reduces an original enumerated charge in exchange for a plea of guilty or declines to prosecute in exchange for an employee's cooperation. But can anyone doubt that the victim's trauma is the same regardless of the State's decisions about whether or what to prosecute.

In sum, the exclusive list of felonies in § 81-2032(2) arbitrarily benefits select victims of its specified crimes and arbitrarily protects State Patrol officers who are convicted of serious felonies that are not enumerated under L.B. 916.

## VII. CROSS-APPEAL

On cross-appeal, Hobbs contends that the court erred in (1) ruling that § 81-2032(2) does not violate his constitutional rights under the Equal Protection Clauses of the state and federal Constitutions and (2) failing to address his challenges under the Due Process and Impairment of Contracts Clauses of the state and federal Constitutions. But Hobbs' other constitutional challenges to the statute are moot because they have been subsumed within our holding that the statute violates the prohibition against special legislation. He does not have a legally cognizable interest in having the statute declared unconstitutional for additional reasons.[55]

## VIII. CONCLUSION

The court correctly determined that the amendment to § 81-2032(2) constitutes special legislation. The Legislature's attempt to create very limited exceptions to an absolute privilege from attachment of a public employee's retirement assets has resulted in a law that benefits only a select group of victims. Simultaneously, the amendment arbitrarily protects public employees who are convicted of comparably serious crimes yet retain an absolute privilege from attachment of their retirement assets. Under the act's purpose of providing compensation to the victims of serious crimes, the favored crime victims are similar in circumstance to many other

---

[55] See *Big John's Billards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

serious crime victims who do not have the attachment remedy. Similarly, there is no substantial difference between the public employees subject to the remedy and those who commit many other serious crimes yet retain their privilege from attachment. Accordingly, the Legislature's preferential treatment of the favored groups and exclusion of others that are similar in circumstance runs afoul of the Constitution's prohibition against special legislation.

Affirmed.

Wright and Cassel, JJ., not participating.

––––––––––

Sam Christiansen, an individual, appellee and cross-appellant, v. County of Douglas, a political subdivision of the State of Nebraska, et al., appellants and cross-appellees.

Rich McShane, on behalf of himself and all similarly situated persons, appellee and cross-appellant, v. County of Douglas, a political subdivision of the State of Nebraska, et al., appellants and cross-appellees.

___ N.W.2d ___

Filed July 18, 2014.    Nos. S-13-689, S-13-691.

1.  **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.
2.  **Equity: Appeal and Error.** Although in many contexts the traditional distinctions between law and equity have been abolished, whether an action is one in equity or one at law controls in determining an appellate court's scope of review.
3.  **Actions: Pleadings.** Whether a particular action is one at law or in equity is determined by the essential character of a cause of action and the remedy or relief it seeks.
4.  **Injunction: Equity.** An action for injunction sounds in equity.
5.  **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
6.  **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.